PEOPLE *v.* NUTTER.

1. SEARCHES AND SEIZURES — SEARCH WARRANT — INTOXICATING LIQUORS.
    Stale information as to alleged violations of prohibition law by defendant is insufficient to justify issuance of search warrant.

2. CRIMINAL LAW—MOTION TO SUPPRESS—ARREST—SEARCHES AND SEIZURES.
    Denial of motion to suppress evidence adjudged arrest of defendant to have been legal and search proper, and ended such issues.

3. SAME—HEARSAY—CURING ERROR—INTOXICATING LIQUORS.
    In prosecution for illegal possession and transportation of intoxicating liquors, it was error to admit hearsay testimony of defendant's reputation as bootlegger, after denial of motion to suppress evidence, and said error was not avoided by instruction submitting to jury question as to whether officers were justified in arresting defendant.

4. SAME—RIGHT TO FACE WITNESSES.
    Person accused of crime has right, at trial, to be confronted, face to face, with witnesses against him.

Appeal from Wexford; Lamb (Fred S.), J. Submitted June 11, 1931. (Docket No. 130, Calendar No. 35,618.) Decided June 25, 1931.

James Nutter was convicted of having violated the liquor law. Reversed.

*F. E. Wetmore,* for appellant.

*Paul W. Voorhies,* Attorney General, and *W. H. Yearnd,* Prosecuting Attorney, for the people.

WIEST, J. December 19, 1930, defendant was arrested by an officer, without a warrant, on belief, based upon claimed reliable information, that defendant possessed and was then transporting intoxicating liquor, and, upon search, the officer seized some "moonshine whisky." Defendant's motion to suppress the evidence so seized was denied before trial, and, upon trial by jury, defendant was convicted. The record does not enable us to pass upon the motion to suppress. If the showing in support of the arrest and search was information as stale as that disclosed by the only dates mentioned at the trial, it would not have justified a search warrant. *People* v. *Chippewa Circuit Judge,* 226 Mich. 326. The denial of the motion to suppress adjudged the arrest to have been legal and the search proper and ended such issues. *People* v. *Burt,* 236 Mich. 62; *People* v. *Cech,* 236 Mich. 75.

At the trial, however, the prosecutor, in his opening statement to the jury, said:

"It will be claimed on the part of the people, and proof will be offered in support of our claim, that for some time, some considerable time prior to the 19th day of December, Mr. Nutter had the reputation in the city of Manton—

"*Mr. Wetmore:* I object to any statement of that kind, if the court please. We are not trying men on reputations. This man is not charged with keeping a place; he is charged with a specific offense, and I object to the statement being made in the presence of the jury; it is prejudicial to the rights of respondent.

"*The Court:* We will take care of that as the testimony comes in. This is simply preliminary. We will get down to what actually took place."

The prosecutor continued:

"It is the claim on the part of the people, and proof will be introduced in support of that claim, that for several years prior to the 19th day of December, and for a considerable period prior, that the respondent, Mr. Nutter, had the reputation in the community of the city of Manton of being a bootlegger. * * *

"It is the claim on the part of the people, and we will introduce evidence to support that claim, that during that considerable period prior to December 19, 1930, information was conveyed to James Truman, and to deputy sheriff Smith, that the respondent, James Nutter, was selling intoxicating liquor in and about the vicinity of Manton.

"*Mr. Wetmore:* I interpose the same objection to this statement and move it be stricken out. It is prejudicial to the rights of the respondent.

"*The Court:* Go ahead, Mr. Yearnd.

"*Mr. Wetmore:* Give me an exception.

"*Mr. Yearnd:* Information was also conveyed to the officers that the respondent was in the habit of bringing liquor into the city of Manton and disposing of it at public dances.

"It is the claim of the people, and we will introduce evidence to support that claim, that acting upon that information deputy Truman, together with deputy Smith, made arrangements whereby they would watch the highway known as M-42, for

the purpose of arresting the respondent, acting upon information which had been conveyed to them which I have indicated."

At the trial, the prosecution called Mr. Truman, asked the following questions, and, over the objection of counsel for defendant, received the following answers:

"*Q.* During the past year immediately preceding December 19, 1930, whether or not you frequently saw the respondent in the city of Manton?
"*A.* I have.
"*Q.* During that period, witness, I will ask you to state if certain information has been conveyed to you concerning respondent, Nutter?
"*A.* There was.
"*Q.* With particular reference to a violation of the prohibition law?
"*A.* There was.
"*Mr. Wetmore:* I object to that, if the court please, as incompetent, immaterial and irrelevant, and highly prejudicial to the rights of this respondent.
"*The Court:* I think I should allow it for the purpose of furnishing a setting for what was actually afterwards done.
"*Mr. Yearnd:* That is the only purpose of it.
"*The Court:* Not bearing on the question of his guilt or innocence. *  *  *
"*Q.* From whom, Mr. Truman, have you received such information?
"*A.* Delos Rosebrook. *  *  *
"*Q.* Just tell us what Delos Rosebrook told you concerning Mr. Nutter.
"*A.* He told me Mr. Nutter was selling boose around Manton.
"*Q.* What else, if anything, did he tell you?
"*A.* 'Why don't you get him?' *  *  *

"*Q.* You may state, witness, whether or not you received similar information from other people and if so from whom?

"*A.* Sherman Clackler. * * *

"*Q.* Just tell the jury what he told you in this regard.

"*A.* He told me Jim was selling booze. * * *

"*Q.* You may state, witness, whether or not you received any other information from other persons?

"*A.* I did.

"*Q.* From whom?

"*A.* Levi Nutter. * * *

"*Q.* What did he tell you?

"*A.* He told me he had a brother peddling booze; bootlegging.

"*Q.* He told you that?

"*A.* Yes, sir.

"*Q.* When did he tell you that?

"*A.* That was along the last of October or the first of November. * * *

"*Q.* You may state, witness, whether or not you obtained additional information concerning the subject-matter?

"*A.* I did.

"*Q.* And from whom?

"*A.* Leonard Mills. * * *

"*Q.* What did he tell you?

"*A.* He told me Jim was bootlegging. * * *

"*Q.* When was that information given to you by Mr. Mills?

"*A.* This summer.

"*Q.* Along this last summer?

"*A.* Yes, sir.

"*Q.* As to whether or not you received any other information from other people concerning this matter?

"*A.* I did.

"*Q.* From whom?

"*A.* Roy Chapman. * * *

"*Q*. What did he tell you?

"*A*. He told me he was peddling booze.

"*Q*. Who do you mean by 'he'?

"*A*. James Nutter.

"*Q*. Just tell the jury what this man told you.

"*A*. He told me Jim was peddling booze and wanted to know why I didn't get him.   *   *   *

"*Q*. As to whether or not, witness, this information that you have related was in your possession and did you know it on the 19th day of December, 1930?

"*A*. I did."

Then the witness went on and detailed the circumstances of the arrest and search. There was no cross-examination of this or any other witness in regard to this hearsay testimony, and the question of the validity of the arrest or seizure was not raised on the trial in any way by defendant. Defendant testified that he did not have the liquor and did not know it was in the car. Defendant's son testified that the liquor belonged to him.

It is stated in the brief in behalf of the people that:

"In denying the defendant's motion to suppress the evidence the trial court held that his arrest was lawful and that the evidence procured admissible in evidence. This action of the court precluded the defendant from trying the collateral issue, but the court thereafter permitted the jury to determine under instructions approved in the *Kamhout Case* whether or not in view of all the circumstances the officers had reasonable cause to believe the defendant was in possession of and transporting liquor.

"This court has not approved this practice, but has explicitly held that if permitted it does not constitute reversible error. *People* v. *Bressler,* 223 Mich. 597, 602; *People* v. *Cardella,* 233 Mich. 505;

*People* v. *Dungey,* 235 Mich. 144, 146; *People* v. *Miller,* 245 Mich. 115; *People* v. *Goss,* 246 Mich. 524.

"Counsel claims this action on the part of the court constituted reversible error, because it prejudiced his client. We submit that the defendant received a decided and distinct advantage on this account in that he received the benefit of having the jury as well as the court pass upon the reasonableness of his arrest. The verdict of the jury not only justified the judgment and good faith of the officers, but it also discredited the defense maintained by Mr. Nutter that the liquor found did not belong to him but to his son."

No justification for such hearsay evidence at the trial is to be found in *People* v. *Kamhout,* 227 Mich. 172. We have held that, where the defendant, at the trial, participated in trying out the issue of arrest and search, he may not thereafter complain, but we have not held that, after a motion to suppress has been denied, the prosecution may thereafter take such issue to the jury over the objection of the defendant, and by such means get to the jury damaging hearsay evidence. We cannot countenance the practice here indulged.

But it is said that the court avoided any error in the instruction to the jury. We quote from the instruction:

"The people are under obligation to establish each and every one of the essential elements going to make up this case. And those essential facts or essential elements that are necessary for you to find in this case are:

"First: Whether the arrest without a warrant was justified under the circumstances of this case at the time the persons were apprehended there at the city of Manton on the 19th day of December, 1930. * * *

"Now, in determining the first question of fact, you will consider the setting of the case. Determine for yourselves whether these officers at the time they suspected and searched this automobile out in the country there and later on when they stopped these parties in the city of Manton were justified in doing so from the information they had received. Under the law the officers shall have the right to do what these officers did if they honestly and in good faith, based upon information that they had received from persons whom they had reason to believe and did believe were telling the truth. That they would have a right to act on such information, and act as these officers acted in this particular case in stopping this automobile and searching it.

"So that the elements that enter into that are the elements of information and where it came from. The officers have told you where they got the information. They had reason to believe and did believe that those parties were telling them the truth, and based on that they took the action that they did. If you find that that is what an ordinarily prudent and careful person would do in exercising that authority, then they were justified in doing what they did on the 19th day of December, 1930. *  *  *

"I say in that connection that the testimony offered by the people relative to the reasons why the officers went out into the country on the 19th day of December, 1930, for the purpose of ascertaining whether or not Mr. Nutter was transporting or having in his possession intoxicating liquor contrary to the law, that the information that they acted upon in going out there is not to be considered by you for any other purpose than to determine whether or not they acted as reasonable, careful and prudent persons would have acted under the same circumstances, and not as substantive proof of the offense charged in the information."

The instruction to the jury did not cure the error. No such issue or "setting" was properly for the jury. It is idle to say that the damaging hearsay testimony was not harmful to defendant.

A person accused of crime has a right, at his trial, to be confronted, face to face, with the witnesses against him. We have stopped the defendant, after denial of a motion to suppress, from taking the question to the jury. The hearsay testimony was most damaging to defendant, related to an issue, determined by the court upon motion to suppress, and was not subject to renewal at the trial by the prosecution or by the defendant.

The conviction is reversed, and a new trial granted.

BUTZEL, C. J., and CLARK, McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.