PEOPLE v TOOKS

Docket No. 59218. Argued March 7, 1978 (Calendar No. 3).—Decided
    November 20, 1978.

    John L. Tooks was charged with carrying a concealed weapon.
    The Recorder's Court of Detroit, Susan D. Borman, J., sup-
    pressed as evidence a pistol which police officers had seized
    from the defendant during a "stop and frisk" and dismissed the
    charges. The trial court found that the search and seizure
    violated the Fourth Amendment because the police officers
    acted upon information supplied by an anonymous person who
    gave them the description of a man he had seen showing a
    pistol to two other men. The informant told them he did not
    wish to give his name because he was afraid of "gangs in the
    area". The Court of Appeals, D. F. Walsh, P.J., and R. B. Burns
    and Bivins, JJ., affirmed in an unpublished per curiam opinion
    (Docket No. 27926). The people appeal. *Held:*

    1. The test to determine the validity of a "stop and frisk" is a
    "reasonable suspicion" test to determine whether the officer's
    action was justified at its inception, and whether it was reason-
    ably related in scope to the circumstances which justified the
    interference. The police officer must be able to point to specific
    and articulable facts which, taken together with rational infer-
    ences from those facts, reasonably warrant the intrusion. A
    "stop and frisk" search in circumstances which lack probable
    cause to arrest must be carefully circumscribed to what is
    necessary for the discovery of weapons. The reliability of the
    information is determined from (1) the reliability of the partic-
    ular informant, (2) the nature of the information given, and (3)
    the reasonability of the suspicion of the officers in light of the
    first two factors.

    2. There is nothing inherently unreliable about a citizen, as
    opposed to a known informant, giving information to the police.
    Informants by their very nature are often involved in or
    connected with criminal activity, and are subjected to a strin-

---

REFERENCES FOR POINTS IN HEADNOTES

[1-11] 68 Am Jur 2d, Searches and Seizures §§ 33, 58, 103
    Law enforcement officer's authority, under Federal Constitution to
      "stop and frisk" person—Supreme Court cases. 32 L Ed 2d 942.

gent test. To favor the known informant over the citizen in this case is illogical. Information provided to law enforcement officers by concerned citizens who have personally observed suspicious activities is entitled to a finding of reliability when the information is sufficiently detailed and is corroborated within a reasonable period of time by the officers' own observations. There was ostensible reason for the informant in this case to refuse to disclose his name and there was no resulting inherent unreliability.

3. The detailed information provided in this case (description of a gun, and the race, sex, age, height, build and clothes of the defendant, and a sufficiently specific description of two other men) allowed independent verification by the police of any persons investigated pursuant to that information. The police verified this information very shortly after it was given to them and within a few blocks of the location in which it had been given. Once the 'officers found the three men matching the description, an investigation was authorized by the circumstances. They had a right to protect themselves by conducting a pat-down search for the weapon they were told was in the defendant's possession.

4. The informant had viewed activity in public which had sufficiently alarmed him so that he reported it to the police. Knowledge that a gun was openly displayed in public creates a reasonable suspicion of criminal activity sufficient to warrant the investigation which occurred in this case, including a pat-down search to protect the public safety and the investigating officers. It is of no consequence that the officers immediately began the pat-down upon encountering the defendant. Because the officer is allowed to make this limited intrusion for his safety, quick action is at a premium. Under all the circumstances, the police had a reasonable suspicion of criminal activity and properly conducted a "stop and frisk" of the defendant in the course of their investigation.

Reversed and remanded.

Chief Justice Kavanagh, with Justice Levin, dissented. He wrote:

1. The "reasonable suspicion" necessary to justify a "stop and frisk" of a defendant need not arise from the police officer's personal observation, but may come from a known informant. One simple rule will not cover every situation. Some tips, competely lacking in indicia of reliability, would either warrant no response or require further investigation before a forcible stop of a suspect. However, the use of a credible confidential informant's tips to justify an appropriate police response is

proper where the informant is known to the police officers and his particular information was gathered by the informant in a reliable manner, or where the information is from identifiable eyewitnesses to or victims of a crime.

2. A tip lacks the indicia of reliability sufficient to authorize a forcible stop of a suspect until reliability is affirmatively demonstrated by the state. It is not the defendant's burden to prove unreliability. Rather, it is the duty of the courts to assure the right of the people *to be secure* against unreasonable searches and seizures. Such security cannot be guaranteed by courts indulging in assumptions concerning the reliability or lack of reliability of informants, but only by a searching scrutiny of the justifiability of the state's actions on a case-by-case basis.

3. The only information supplied by the anonymous informant which was corroborated by the police officer's personal observation upon his arrival at the scene was the non-incriminating description of three black males walking along a public street. Such information was available to any passerby or resident in the area. This does not constitute, by itself, the requisite "reasonable suspicion" for a stop and frisk without doing violence to the specific and carefully drawn exception enunciated by the Supreme Court of the United States.

4. Where the informant is unknown, there is no information regarding his reliability. His reliability cannot reasonably be inferred on verification of innocuous information that there is no reason to believe the accused would conceal. Corroboration of innocent details tends to show that the informant is acquainted with the accused, but does not tend to show present criminal activity absent the "track record" of the reliable informant who can tell the police when there is reason to proceed against the accused. Without a track record there is no way of knowing whether the anonymous tipster is acting on anything more substantial than personal animus or his suspicions—of less, certainly no greater, probity than a police officer's suspicions. The physical presence of an anonymous informant is not persuasive that the anonymous tip involved here is deserving of greater reliance than an anonymous telephone call. The deficiency is in the lack of evidence of the reliability of the informant and is the same in either case.

OPINION OF THE COURT

1. SEARCHES AND SEIZURES — STOP AND FRISK — REASONABLE SUSPICION.

The test to determine the validity of a "stop and frisk" by police

is a "reasonable suspicion" test to determine whether the police action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference (US Const, Am IV).

2. SEARCHES AND SEIZURES — STOP AND FRISK — FACTS.

A police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion of a "stop and frisk" search in order to justify that conduct (US Const, Am IV).

3. SEARCHES AND SEIZURES — STOP AND FRISK — WEAPONS.

A "stop and frisk" search by police in circumstances which lack probable cause to arrest must be carefully circumscribed to what is necessary for the discovery of weapons (US Const, Am IV).

4. SEARCHES AND SEIZURES — STOP AND FRISK — REASONABLE SUSPICION — INFORMANTS.

Whether information supplied to police carries enough indicia of reliability to provide police officers with a reasonable suspicion for a "stop and frisk" search depends on (1) the reliability of the particular informant, (2) the nature of the particular information given, and (3) the reasonability of the suspicion in light of the first two factors (US Const, Am IV).

5. SEARCHES AND SEIZURES — CITIZENS — INFORMANTS — RELIABILITY.

Information provided to law enforcement officers by concerned citizens who have personally observed suspicious activities is entitled to a finding of reliability when the information is sufficiently detailed and is corroborated within a reasonable period of time by the officers' own observations.

6. SEARCHES AND SEIZURES — STOP AND FRISK — REASONABLE SUSPICION — INFORMANTS — WEAPONS.

Police officers had sufficient reasonable suspicion of criminal activity, carrying a concealed weapon, and properly conducted a "stop and frisk" of a defendant in the course of their investigation on the basis of information from an anonymous citizen who approached them and told them that he had seen a man showing a gun to two other men where there was ostensible reason for the citizen to refuse to disclose his name and there was no resulting inherent unreliability, the information given to police was extremely accurate and detailed in describing the defendant and his companions, and the information was verified by police officers very shortly after it was given to them

and within a few blocks of the location in which they had been given the information (US Const, Am IV).

7. SEARCHES AND SEIZURES — STOP AND FRISK — REASONABLE SUSPICION — WEAPONS.

Knowledge that a gun was openly displayed in public creates a reasonable suspicion of criminal activity to warrant an investigation by police officers including a pat-down search of a defendant who matched the description given to them very shortly after and within a few blocks of the location where the information was given, and it is of no consequence that the officers immediately begin the pat-down upon encountering the defendant; because the officer is allowed to make this limited intrusion for his safety, quick action is at a premium (US Const, Am IV).

DISSENTING OPINION BY KAVANAGH, C.J.

8. SEARCHES AND SEIZURES — STOP AND FRISK — REASONABLE SUSPICION.

*The "reasonable suspicion" necessary to justify a "stop and frisk" of a defendant need not arise from the police officer's personal observation, but may come from an informant known to the officer as reliable whose information was gathered in a reliable manner, or from identifiable eyewitnesses to a crime or from the victim (US Const, Am IV).*

9. SEARCHES AND SEIZURES — STOP AND FRISK — REASONABLE SUSPICION.

*A tip lacks the indicia of reliability sufficient to authorize a forcible stop of a suspect until reliability is affirmatively demonstrated by the state; it is not the defendant's burden to prove unreliability (US Const, Am IV).*

10. SEARCHES AND SEIZURES — RELIABILITY OF INFORMANTS

*It is the duty of the courts to assure the right of the people to be secure against unreasonable searches and seizures; such security cannot be guaranteed by courts indulging in assumptions concerning the reliability or lack of reliability of informants, but only by a searching scrutiny of the justifiability of the state's actions on a case-by-case basis (US Const, Am IV).*

11. SEARCHES AND SEIZURES — STOP AND FRISK — REASONABLE SUSPICION.

*Information supplied to a police officer by an unidentified informant who said he had seen a pistol displayed in public does not*

*establish the "reasonable suspicion" necessary to justify a "stop
and frisk" of defendants where the only information supplied
which was corroborated by the police officer's personal observa-
tion upon his arrival at the scene was the non-incriminating
description of three black males walking along a public street;
the physical presence of the informant when he communicated
the information to the officer on the street is not persuasive
that the information is deserving of greater reliance than if it
had been given by an anonymous telephone call; the deficiency
is in the lack of evidence of the reliability of the unknown
informant and is the same in either case (US Const, Am IV).*

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Edward Reilly Wilson,* Prin-
cipal Attorney, Appeals, and *Timothy A. Baugh-
man,* Assistant Prosecuting Attorney, for the peo-
ple.

*Sherry A. McCameron* and *Thomas M. Loeb* for
defendant.

WILLIAMS, J. As a result of rather specific infor-
mation received from a citizen who refused his
name because of fear of local gangs, John Levester
Tooks was subjected to a pat-down police search
during which a gun was discovered. He was subse-
quently charged with carrying a concealed
weapon. The prosecutor appeals to this Court from
affirmance by the Court of Appeals of an order to
suppress that evidence.

We reverse.

## I. FACTS

On November 6, 1975, an unidentified citizen
approached two Detroit police officers and gave the
officers information that he had observed a man
showing a gun to two other men. He described the
man with the gun as a black male, 20 years old,

five feet, six inches tall, of medium build and wearing a black suede jacket. The two other men were also described by the citizen; the first was a black male, 17 years old, five feet, six inches tall and wearing a green hat, and the second was a black male age 17 or 18. The citizen refused to identify himself because of fear of "gangs in the area".

Four or five blocks from the location in which the officers had received the information, they encountered three males matching the descriptions given by the citizen. The officers observed that one of the three men wore a black suede coat and another wore a green hat. While one of the officers engaged in a pat-down search of defendant Tooks, who was wearing the black suede coat, he encountered a hard object and removed a .22-caliber pistol from the defendant's back pocket. Defendant Tooks was then arrested and charged with carrying a concealed weapon in violation of MCL 750.227; MSA 28.424.

Prior to trial, defendant's motion to suppress the evidence of the gun was granted by the Recorder's Court judge. The rationale for the suppression of the evidence was that the officers lacked probable cause to search and arrest the defendant. The Court of Appeals affirmed in an unpublished per curiam opinion.

This Court granted leave to appeal on June 2, 1977.

## II. Issue

The sole issue to be decided by this Court is whether the information supplied to the police in person by an anonymous informant may justify a

*Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), pat-down search.

We hold that a pat-down search conducted under the circumstances of this case was justified.

## III. LEGALITY OF SEARCH

In *Terry v Ohio, supra,* the United States Supreme Court held that in certain circumstances police officers who have neither warrants nor probable cause to arrest or search may "stop and frisk" persons. While the Supreme Court held that a stop and frisk is subject to the Fourth Amendment prohibitions against unreasonable search and seizure, that Court recognized that the Fourth Amendment does not prohibit all search and seizure, but only those that are unreasonable. *Terry, supra,* 9. The rationale for allowing police intrusion into the Fourth Amendment is a balancing of the police officer's practical need to initiate and conduct a brief on-the-spot investigation without jeopardizing his or her safety, against the individual's right to be free from unwarranted police intrusion.

The test under *Terry* to determine the validity of the stop and frisk is a "reasonable suspicion" test directed at determining (1) "whether the officer's action was justified at its inception, and" (2) "whether it was reasonably related in scope to the circumstances which justified the interference in the first place". *Terry, supra,* 20. To justify an officer's conduct, the officer must "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion". *Terry, supra,* 21. In justifying a stop and frisk in circumstances that lack probable cause to arrest the Court held

that such a search must be carefully circumscribed to what is necessary for the discovery of weapons.

In *Adams v Williams,* 407 US 143; 92 S Ct 1921; 32 L Ed 2d 612 (1972), the Supreme Court extended the *Terry* stop and frisk rationale to situations in which the stop and frisk was prompted by an unverified tip from an informant. In allowing the stop and frisk based on information from an informant, the *Adams* Court focused on the nature of the information supplied by the informant. The Court clearly rejected the argument that a stop and frisk can only be based on the officer's personal observation, rather than on information supplied to the police by another person.

The information given by the informant in *Adams* was conclusory and unverified, and would have been insufficient for an arrest or search warrant. The officer had been approached by an informant known to him and told that an individual had narcotics and a weapon. The Court held the information sufficient to justify a stop and frisk, stating:

"[W]hile the Court's decisions indicate that this informant's unverified tip may have been insufficient for a narcotics arrest or search warrant, * * * the information carried enough indicia of reliability to justify the officer's forcible stop of [the defendant]." *Id.,* 147.

The reasonableness standard of *Terry* and *Adams* has been followed in various cases in Michigan. See, *e.g., People v Stergowski,* 391 Mich 714; 219 NW2d 68 (1974), and *People v Eddington,* 387 Mich 551; 198 NW2d 297 (1972) (must look to reasonableness under all circumstances); *People v Parisi,* 393 Mich 31; 222 NW2d 757 (1974), and *People v Whalen,* 390 Mich 672; 213 NW2d 116 (1973) (automobile cases). However, the specific

issue with which we are faced is new to this jurisdiction.

In determining whether the information from the citizen-informant carried enough indicia of reliability to provide the officers with a reasonable suspicion under the standards of *Terry* and *Adams,* we must examine three related factors: (1) the reliability of the particular informant, (2) the nature of the particular information given to the police, and (3) the reasonability of the suspicion in light of the above factors.

First, the informant in this case was unknown to the police and refused to identify himself during the disclosure of information. Defendant asserts that these factors necessarily lead to the conclusion that the information was neither reliable nor credible. We do not agree.

There is certainly nothing inherently unreliable about a citizen as opposed to a known informant giving information to the police. A regular informant can, and often does, provide police with detailed and accurate information and, because of a continuing relationship which at times exists, the police are in a position to judge the accuracy of such information based on a prior experience with the individual. However, informants by their very nature are often involved in or connected with criminal activity. To favor the known informant over the citizen in this case is illogical. We feel that information provided to law enforcement officers by concerned citizens who have personally observed suspicious activities is entitled to a finding of reliability when the information is sufficiently detailed and is corroborated within a reasonable period of time by the officers' own observations. As stated in a decision of the California Court of Appeals and cited as authority by the

Michigan Court of Appeals, *People v Emmert,* 76
Mich App 26, 31, fn 1; 255 NW2d 757 (1977),

" 'Citizen informants are not subjected with respect to
their reliability to the same stringent test as persons
who are themselves criminally involved or disposed
upon the rationale that such citizens are motivated by
good citizenship and their information is imparted in
the aid of law enforcement.' " *People v Schulle,* 51 Cal
App 3d 809, 813; 124 Cal Rptr 585 (1975).

We find that there was ostensible reason for the
citizen refusing to disclose his name and that
there was no resulting inherent unreliability.

This finding is enhanced by and is especially
true in light of the second related factor; the
detailed information provided regarding the sus-
pects which allowed independent verification by
the police of any persons investigated pursuant to
that information. The importance of the precise-
ness of description allowing independent verifica-
tion is great, as demonstrated by *Draper v United
States,* 358 US 307; 79 S Ct 329; 3 L Ed 2d 327
(1959), where an informant's information was
found to give police sufficient probable cause to
arrest—a *higher* standard than we are considering
in the instant case.[1] In *Draper,* an informant gave
police extremely detailed information about the
location, time, dress, build, etc. of the defendant

---

[1] Defendant attempts to support his position by citation to cases
dealing with probable cause to arrest or search.

See *Spinelli v United States,* 393 US 410; 89 S Ct 584; 21 L Ed 2d
637 (1969); *Aguilar v Texas,* 378 US 108; 84 S Ct 1509; 12 L Ed 2d 723
(1964); *People v Charles D Walker,* 385 Mich 565; 189 NW2d 234
(1971); *People v Emmert,* 76 Mich App 26; 225 NW2d 757 (1977);
*People v Ulysses Walker,* 64 Mich App 138; 235 NW2d 85 (1976),
*reversed* 401 Mich 572; 259 NW2d 1 (1977).

We find such cases inapplicable because of the higher standard
necessary for probable cause as opposed to reasonable suspicion.

therein. The informant also told the officer that the defendant would be carrying narcotics. The Court found that there was probable cause to arrest, despite the fact that there was no warrant, by reasoning that a magistrate, if confronted with such detail, could reasonably infer that the informant had gained his information in a reliable way. The Court further found that the officer's ability to personally verify the identification because of the detail of description and location was an important factor.

"[W]hen, in pursuing that information, he saw a man, having the exact physical attributes and wearing the precise clothing and carrying the tan zipper bag that * * * [the informant] had described, alight from one of the very trains from the very place stated by * * * [the informant] and start to walk at a 'fast' pace toward the station exit, * * * [the officer] had personally verified every facet of the information given him by * * * [the informant] except whether petitioner had accomplished his mission and had the three ounces of heroin on his person or in his bag. And surely, with every other bit of * * * [the informant's] information being thus personally verified, * * * [the officer] had 'reasonable grounds' to believe that the remaining unverified bit of * * * [the informant's] information—that Draper would have the heroin with him—was likewise true." *Draper, supra,* 313.

This kind of detail not only enhances the reliability of the information, but prevents the danger of widespread intrusion by indiscriminate stopping and frisking of members of the public.

The citizen in the instant case described a gun, the race, the sex, the age, the height, the build, and the clothes of defendant Tooks. In addition, the citizen also described the other men with sufficient specificity. Despite his anonymity, this

Court is impressed with the detail and preciseness of the information given to the officers.

In addition, this information was verified by the officers very shortly after it was given to them and within a few blocks of the location in which the officers had been given the information. Once the officers had found the three men matching the description given by the citizen, we do not think that they should be forced to obtain a search warrant or not investigate what they reasonably believed could be a dangerous situation in that defendant possessed a gun. Once such an investigation was authorized by the circumstances, they had a right to protect themselves by conducting a pat-down search for the weapon they were told was in defendant's possession.

The third related factor, the reasonableness of the suspicion, in light of the analysis of the above two factors, is clearly satisfied in favor of the action taken by the police. The activity viewed by the informant occurred in public and obviously sufficiently alarmed the observer that he reported the activity to the police. If the police had not acted on this information, at least to the point of investigation, it appears to us they would have been derelict in their duties. In *People v Whalen,* 390 Mich 672, 680; 213 NW2d 116 (1973), this Court quoted Justice Rehnquist's majority opinion in *Adams, supra:*

" 'In *Terry* this Court recognized that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." [392 US] *Id.,* at 22 [88 S Ct at 1880]. *The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to*

*simply shrug his shoulders and allow a crime to occur
or a criminal to escape.* On the contrary, *Terry recog-
nizes that it may be the essence of good police work to
adopt an intermediate response.* See *id.,* at 23 [88 S Ct
at 1881]. A brief stop of a suspicious individual, in order
to determine his identity or to maintain the status quo
momentarily while obtaining more information, may be
most reasonable in light of the facts known to the
officer at the time. *Id.,* at 21–22 [88 S Ct at 1879–1880]' ".
(Emphasis added.)

We find the knowledge that a gun was openly
displayed in public does create a reasonable suspi-
cion of criminal activity sufficient to warrant the
type of investigation including a pat-down search
which occurred in this case, and that investigation
is exactly the type of "good police work" which is
not only acceptable but necessary for the safety of
the public.[2] To allow such an investigation without
also permitting a pat-down search in conjunction
therewith, is to protect the public safety and at
the same time jeopardize the safety of the investi-
gating officers.

We are dealing with a weapon here rather than
narcotics or other contraband. Because the action
of stopping and frisking is taken for police safety,
when the officers have information that a weapon
is present a stronger case is made for stopping and
frisking.

We are not dealing with an anonymous tele-
phone tip to a police station, see *People v Cabello,*
74 Mich App 78; 253 NW2d 363 (1977), or an
officer arbitrarily stopping a person on the street.
We are dealing with a citizen who gave the police

[2] See *United States v Frye,* 271 A2d 788, 790 (DC Ct App, 1970), in
which the court stated,

"We have here another of those moving street scenes where quick,
reasonable action by the police is necessary else events will pass them
by with the result, perhaps, of another crime committed which could
have been prevented or solved."

officers extremely accurate and verifiable information concerning criminal activity. Given the accuracy and detail of this information we think the officers in the instant case had sufficient reasonable suspicion to stop and frisk.

In addition, it is of no consequence that the officers involved herein immediately began the patdown upon encountering the defendant. Because the officer is allowed to make this limited intrusion for his or her safety, quick action is at a premium. In *Adams, supra,* the officer also reached immediately for the weapon. While this Court need not decide whether the higher standard of probable cause was met, we are highly persuaded by the similarity of the detailed information in the instant case and *Draper, supra.*

Accordingly, we find that the information supplied to the officers in this case was of such detail and accuracy as to give it sufficient reliability so that the officers in the instant case had reasonable suspicion that criminal activity was occurring.[3]

## IV. CONCLUSION

Because we find under the totality of the circumstances, that the police had a reasonable suspicion of criminal activity and properly conducted a stop and frisk of defendant in the course of their inves-

---

[3] See *People v Lillis,* 64 Mich App 64; 235 NW2d 65 (1975), in which the officer had information that a convict had escaped from Jackson Prison and had specific information upon which to base an identification; a photograph as well as description of the height, build, weight, hair color, complexion, etc. Two days after being given this information, an officer spotted a man who he thought was the convict. The officer observed the man in a car and confirmed his suspicions with several other officers. The car was stopped and a gun was discovered in a pat-down search. The escaped convict was not in the car. The court held the investigatory stop to be within the standards of reasonableness based on the information that the officers had that criminal activity may have been occurring.

tigation, the evidence of the gun is properly admissible.

Reversed and remanded.

Coleman, Fitzgerald, Ryan, and Blair Moody, Jr., JJ., concurred with Williams, J.

Kavanagh, C.J. *(for affirmance).* Defendant was charged with carrying a concealed weapon contrary to MCL 750.227; MSA 28.424. The trial court granted defendant's pretrial motion to suppress the gun as evidence against him. The Court of Appeals affirmed in an unpublished per curiam opinion. We granted the prosecutor's application for leave to appeal to consider whether an unidentified citizen's tip can provide the "reasonable suspicion" necessary for a stop and frisk under *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968). We affirm.

## Facts

Testimony adduced at the preliminary examination establishes that the complaining police officer was approached by a citizen on the street who informed him that he had, minutes earlier, witnessed three males, one showing a pistol to the other two, a few blocks away. The citizen informant described the race, approximate ages, sizes and clothing of the men he had observed. However, the citizen informant left the scene without identifying himself because, according to the officer's testimony, he feared gangs in the area.

Within five minutes of receipt of this information the officer apprehended three black men in the same location and fitting the description given by the unidentified citizen informant. The officer testified at the preliminary examination:

"We stopped them and began patting them down for offensive weapons. And we removed a .22-caliber pistol from the defendant's back pocket."

## Discussion

*This Court must determine whether or not the police officer had "reasonable suspicion" based upon an unidentifiable citizen's tip in order to justify subsequent stopping and frisking of the defendant in this case.*

Upon review of the controlling Fourth Amendment precedent we find the officer's information did not constitute "reasonable suspicion" and consequently could not justify the stop and frisk of the defendant. We would affirm the trial court and the Court of Appeals in suppressing the evidence seized.

In the seminal stop and frisk case, *Terry v Ohio,* 392 US 1 (1968), the United States Supreme Court said:

"We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." 392 US 1, 30.

In a later United States Supreme Court case it

became apparent that the "reasonable suspicion" necessary for stop and frisk need not arise from the officer's personal observation, but could in fact come from a known informant. *Adams v Williams,* 407 US 143; 92 S Ct 1921; 32 L Ed 2d 612 (1972). The *Adams* Court said:

"In reaching this conclusion, we reject respondent's argument that reasonable cause for a stop and frisk can only be based on the officer's personal observation, rather than on information supplied by another person. Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability. One simple rule will not cover every situation. Some tips, *completely lacking in indicia of reliability,* would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized. But in some situations—for example, when the victim of a street crime seeks immediate police aid and gives a description of his assailant, or when a *credible* informant' warns of a specific impending crime—the subtleties of the hearsay rule should not thwart an appropriate police response." 407 US 143, 147. (Emphasis supplied.)

It is important to note that in *Adams* the Court referred to tips "lacking in indicia of reliability" as being insufficient to authorize a forcible stop of a suspect. A tip lacks indicia of reliability until reliability is affirmatively demonstrated by the state. It is not the defendant's burden to prove unreliability. Rather, it is the duty of this Court to assure "the right of the people *to be secure* * * * against unreasonable searches and seizures". Such security cannot be guaranteed by courts indulging in assumptions concerning the reliability or lack thereof of informants, but only by a searching scrutiny of the justifiability of the state's actions on a case-by-case and person-by-person basis.

However, contrary to the facts in the instant matter the informant was known to the police in *Adams.* That Court suggested that a tip from an unknown and anonymous informant would constitute a critical distinction for Fourth Amendment stop and frisk analysis:

"Applying these principles to the present case, we believe that Sgt. Connolly acted justifiably in responding to his informant's tip. The informant was known to him personally and had provided him with information in the past. This is a stronger case than obtains in the case of an anonymous telephone tip. The informant here came forward personally to give information that was immediately verifiable at the scene." 407 US 143, 146.

The instant facts present a situation interstitial to two lines of cases, the first line which sanctions the proper use of confidential informant's tips under *Aguilar v Texas,* 378 US 108; 84 S Ct 1509; 12 L Ed 2d 723 (1964), and *Spinelli v United States,* 393 US 410; 89 S Ct 584; 21 L Ed 2d 637 (1969), and the second line which allows information from identified bystanders or victims to constitute the "reasonable suspicion" or probable cause necessary for a stop and frisk.

The first group of cases dictates that police who rely on confidential informants for probable cause must satisfy the two-pronged test set forth by the United States Supreme Court in *Aguilar v Texas, supra.* The informant must be shown by the police officers to be known to them as a reliable individual and the informant's particular information must have been gathered by the informant in a reliable manner. See also *Draper v United States,* 358 US 307; 79 S Ct 329; 3 L Ed 2d 327 (1959).

In the other line of cases police have relied upon

information supplied by identifiable bystanders, eyewitnesses of crime. Such individuals, ordinarily identified by the police, have not been subjected to the *Aguilar-Spinelli* test as are professional anonymous informants. The Fifth Circuit said in *United States v Bell,* 457 F2d 1231 (CA 5, 1972):

> "It is now a well-settled and familiar concept, as enunciated by *Aguilar* and *Spinelli,* that supporting affidavits in an application for a search warrant must attest to the credibility of an informant and the reliability of his information. [Citations omitted.] We have discovered no case that extends this requirement to the identified bystander or victim-eyewitness to a crime, and we now hold that no such requirement need be met." 457 F2d 1231, 1238.

In *McCreary v Sigler,* 406 F2d 1264 (CA 8, 1969), the Eighth Circuit did, however, subject an affiant's statements, made in support of an application for a search warrant, to *Aguilar-Spinelli* review. The Court did so notwithstanding the fact that the informant, though unnamed, was an apparently uninvolved bystander, identifiable as the gas station attendant on the corner where the crime was allegedly committed. The *McCreary* Court determined that the bystander's story, replete with detail concerning the subjects and the criminal activity, together with immediate corroborative observation of the described suspects by a fellow officer, met Fourth Amendment standards, and therefore ordered the challenged evidence admitted at trial.

Here, the only information supplied by the anonymous informant which was corroborated by the officer's personal observation upon his arrival at the scene was the non-incriminating description of three black males walking along a public street.

Such information was available to any passerby or resident in the area. See *Commonwealth v Cruse,* 236 Pa Super 85; 344 A2d 532 (1975). This does not, by itself, constitute the requisite "reasonable suspicion" for a Fourth Amendment stop and frisk without doing violence to the specific and carefully drawn exception enunciated by the United States Supreme Court in *Terry, supra.*

Our recent case of *People v Walker,* 401 Mich 572; 259 NW2d 1 (1977), is on point. I signed my Brother Levin's dissent in that case for the reasons I write here. While I recognize that the *Walker* case involved an arrest rather than the stop and frisk addressed in the instant case, I nonetheless must voice the same kind of objections to the majority's disposition here. In *Walker* we said:

"Where the informant is unknown, there is no information regarding his reliability. His reliability cannot reasonably be inferred on verification of innocuous information there is no reason to believe the accused would conceal.

"Corroboration of innocent details tends to show that the informant is acquainted with the accused, but does not tend to show present criminal activity absent the 'track record' of the reliable informant who can tell the police when, without shooting in the dark, there is reason to proceed against the accused. Without a track record there is no way of knowing whether the anonymous tipster is acting on anything more substantial than personal animus or his suspicions—of less, certainly no greater, probity than a police officer's suspicions." pp 585-586.

The tip involved in *Walker, supra,* is distinguishable from the instant tip in only one respect—in *Walker,* the anonymous tip was delivered via the telephone, and in the matter now before us, the tip

was allegedly communicated on the street in person. The physical presence of an anonymous informant does not persuade me that the anonymous tip involved here is deserving of greater reliance. The deficiency is in the lack of evidence of the reliability of the informant and is the same in either case.

LEVIN, J., concurred with KAVANAGH, C.J.