# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

ENRIQUE ALONSO OLVERA,

       Defendant-Appellant.

UNPUBLISHED
February 16, 2017

No. 330218
Kent Circuit Court
LC No. 13-006261-FH

---

Before: MURPHY, P.J., and SAWYER and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] his conviction for carrying a concealed weapon (CCW), MCL 750.227(2). The trial court sentenced defendant to two years' probation. We affirm.

In the early morning of June 21, 2013, Grand Rapids police received an anonymous tip that the passenger of a white GMC Yukon with large rims was brandishing a pistol at passersby in the area of Franklin and Grandville, and that the vehicle was last spotted heading north. Officer Joseph Garrett received this information over dispatch and shortly thereafter identified a vehicle matching the description near the area of the reported incident. Officer Garrett, along with another officer, conducted a high-risk stop of the vehicle. Once the driver, later identified as defendant, and the passenger were safely secured, officers searched the vehicle and found a pistol in the glove compartment and two magazines loaded with ammunition in the center console. Defendant admitted that the pistol and ammunition were his, and he was subsequently arrested and charged with CCW.

At trial, defendant again admitted that the pistol and ammunition were his. He testified that the pistol and ammunition were in his vehicle, and that the pistol was in his glove compartment and the ammunition was in the center console. He further testified that he had noticed that the pistol was in his glove compartment not long before the officers pulled him over. He defended his actions by explaining that, by removing the ammunition from the pistol and

---

[1] *People v Olvera*, unpublished order of the Court of Appeals, entered March 17, 2016 (Docket No. 330218).

-1-

storing the pistol and ammunition in different areas of his vehicle, he was following the instructions for transporting a weapon given to him by the dealer who sold the pistol to him. Therefore, according to defendant, he did not knowingly violate the law. The jury disagreed and convicted him on the single count.

*Confrontation Clause.* On appeal, defendant first argues that he was denied his Sixth Amendment right of confrontation when the trial court allowed the admission of the anonymous tip at trial. We disagree. Whether the admission of evidence "violate[s] a defendant's Sixth Amendment right of confrontation is a question of constitutional law that this Court reviews de novo." *People v Nunley*, 491 Mich 686, 696-697; 821 NW2d 642 (2012).

"The Confrontation Clause is primarily a functional right in which the right to confront and cross-examine witnesses is aimed at truth-seeking and promoting reliability in criminal trials." *Id*. at 697 (internal quotation marks and citation omitted). "In pursuit of the Clause's truth-seeking purpose, our criminal jurisprudence is clear, then, that '[a] person accused of a crime has a right, at his trial, to be confronted, face to face, with the witnesses against him.' " *People v Fackelman*, 489 Mich 515, 528; 802 NW2d 552 (2011), quoting *People v Nutter*, 255 Mich 207, 215; 237 NW 384 (1931) (alterations in original). An important limitation on this right of confrontation, however, is that it applies "only to statements used as substantive evidence." *Id*. Specifically, testimony offered to establish the truth of the matter asserted may violate the Confrontation Clause when the declarant is unavailable for cross examination. *Crawford v Washington*, 541 US 36, 59, 68; 124 S Ct 1354; 158 L Ed 2d 177 (2004). When the testimony is offered for a purpose other than to establish the truth of the matter asserted, however, the Confrontation Clause is not implicated regardless of the availability of the declarant. *People v Chambers*, 277 Mich 100 1, 10; 742 Nw2d 610 (2007); *People v McPherson*, 263 Mich App 124, 134; 687 NW2d 370 (2004).

In this case, the anonymous tip was not admitted as substantive evidence. The officers testified that the reason they pulled defendant's vehicle over was because dispatch received an anonymous tip that defendant's passenger was brandishing a weapon at passersby. None of the officers testified that defendant's passenger actually brandished a weapon. Further, defendant was charged with CCW, not brandishing a weapon, and the prosecutor explained during her opening that defendant was not charged with brandishing. The record makes clear, in other words, that the officers' testimony focused on justifying why they performed a high-risk stop of defendant's vehicle, and not on establishing that defendant's passenger did, in fact, brandish a weapon at passersby. MRE 801(c). Courts have found that similar testimony showing why police made a vehicle stop or approached a residence was not hearsay and did not implicate a defendant's constitutional rights. See, e.g., *Chambers*, 277 Mich App at 10; *City of Westland v Okopski*, 208 Mich App 66, 77-78; 527 NW2d 780 (1994); *People v Jackson*, 113 Mich App 620, 624; 318 NW2d 495 (1982).

In contrast, the authority that defendant relies upon is unavailing. *People v Eady*, 409 Mich 356, 359-360; 294 NW2d 202 (1980), for example, does not support a different result here because, in that case, the radio dispatch statements were offered as substantive evidence that the victim actually feared for her safety and to rebut the defendant's argument that the victim pretended to resist his advances out of embarrassment, not fear. As for defendant's reliance on *Etherton v Rivard*, 800 F3d 737 (CA 6, 2015), that decision is unhelpful for several reasons, not

least of which is that the U.S. Supreme Court subsequently reversed the Sixth Circuit's grant of habeas relief, *Woods v Etherton*, 136 S Ct 1149; 194 L Ed 2d 333 (2016). Defendant's remaining cases are similarly distinguishable.

Because the officers' statements were not offered to prove that the passenger actually brandished a weapon, the statements were not hearsay and did not violate defendant's rights under the Confrontation Clause. Although the trial court somewhat confusingly found that the officers' statements were "not hearsay" because they were offered "to explain why the police acted in the manner in which they did," but then relied on an *exception* to Michigan's hearsay rule (MRE 803(3)) to admit the statements, we conclude that any minor confusion was harmless and, in any event, we can affirm for a reason other than the one relied upon by the trial court. See *People v Buie*, 126 Mich App 39, 42; 337 NW2d 305 (1983) (agreeing that the trial court's stated reasons did not support its order but "[n]evertheless" affirming on other grounds).

We likewise reject defendant's claim that the trial court erred by refusing to give a cautionary instruction to the jury regarding the anonymous tip.

Batson *Challenge*. Defendant next argues that the trial court erred by refusing to grant his *Batson* challenge to the prosecutor's preemptory dismissal of two minority jurors. We disagree.

In *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986), the U.S. Supreme Court held that a prosecution's use of a preemptory challenge to remove a person from a jury pool based on racial discrimination violated the Equal Protection Clause. When considering a *Batson* challenge, a trial court should employ a three-step process. *People v Knight*, 473 Mich 324, 336; 701 NW2d 715 (2005). "First, the defendant must show a prima facie case of discrimination." *People v Armstrong*, 305 Mich App 230, 238; 851 NW2d 856 (2014). Second, if the defendant clears this initial hurdle, then "the prosecutor may rebut the defendant's prima facie case with a race-neutral reason for dismissing the juror." *Id*. "Third, the trial court must determine whether the prosecutor's explanation is a pretext for discrimination." *Id*. While this burden-shifting framework is intended to help guide the trial court, the ultimate question remains whether unlawful racial discrimination occurred. See *Batson*, 476 US at 85 (recognizing that, when ratified, "the central concern of the . . . Fourteenth Amendment was to put an end to governmental discrimination on account of race," and noting that the Supreme Court has long held "that racial discrimination in jury selection offends the Equal Protection Clause").

On appeal, when reviewing a *Batson* challenge, "the applicable standard of review depends on which *Batson* step is at issue before the appellate court." *Knight*, 473 Mich at 338. For the first step, "we review the trial court's underlying factual findings for clear error," but "we review questions of law de novo." *Id*. at 345. In the second step, "we review the proffered explanation de novo." *Id*. For the third step, "we review the trial court's ruling for clear error." *Id*. "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Johnson*, 466 Mich 491, 497-498; 647 NW2d 480 (2002). The trial court's ultimate finding of fact on discriminatory intent "is accorded great deference." *Knight*, 473 Mich at 344.

As the record in this case confirms, the trial court did not rigorously follow *Knight*'s three-step analysis for *Batson* challenges. Specifically, the trial court did not find that defense counsel established a prima facie case of discrimination. Indeed, the record appears quite thin as to whether defense counsel could have, in fact, cleared this initial hurdle. There mere fact that the prosecutor struck two minorities with preemptory challenges is not, in itself, sufficient to make a prima facie case of discrimination. There is nothing in the record below, for example, to show the composition of the jury pool at the time the *Batson* challenge was made, nor was there any argument comparing the answers of the various potential jurors. See, e.g., *United States v Ochoa-Vasquez*, 428 F3d 1015, 1044 (CA 11, 2005) (explaining persuasively that there are several pertinent factual circumstances to consider on the question of prima facie case of discrimination). Instead of pressing defense counsel on this first step, the trial court skipped ahead to the second and third steps. Because we can affirm on the ultimate question of discriminatory intent, we need not determine whether the trial court erred by skipping the first step.

As the trial court found, the prosecutor offered several non-raced based reasons for dismissing the two jurors, namely that one juror had difficulty hearing or understanding English, and the other juror was nineteen years old at the time and the prosecutor typically excused teenagers. The trial court offered defense counsel an opportunity to rejoin these proffered reasons, to which counsel asserted that there was no evidence that there was a language barrier and, moreover, that the prosecutor's reasons were "lame . . . after-the-fact excuses." The trial court rejected defense counsel's rejoinder and denied the *Batson* challenge.

The trial court did not commit clear error. The record shows that during voir dire, the trial court had to call the first dismissed juror several times and that the juror's inability to hear or understand led to considerable confusion as to where other jurors should sit in the jury box. The trial court noted that the prosecutor's position was "supported by [the court's] own independent and verified observation." Thus, there is evidence in the record that the first dismissed juror did, in fact, have some kind of hearing problem or language barrier.

As to the second dismissed juror, there is nothing in the record to suggest that he was not a teenager, that the prosecutor did not have a general policy of excusing teenagers from sitting on a jury, or that there was another teenaged, non-minority juror who the prosecutor did not challenge. Simply put, other than the fact that the second dismissed juror was a minority, defense counsel provided no other evidence or substantive argument of pretext with regard to the juror's dismissal. Given this paucity of evidence of discriminatory intent, it was not clear error for the trial court to give credence to the prosecutor's stated, non-race-based rationale over the conclusory assertions made by defense counsel.

Accordingly, we reject defendant's *Batson* challenge.

*Supplemental Jury Instructions.* Defendant next argues that the trial court erred by giving supplemental instructions to the jury during deliberations that added an additional unnoticed charge against defendant and directed the jury to return a verdict of guilty. We disagree.

-4-

Defendant was charged with CCW in a vehicle under MCL 750.227(2), which required for conviction that the prosecutor prove three elements: (1) the presence of a weapon in a vehicle operated or occupied by the defendant, (2) that the defendant knew or was aware of its presence, and (3) that he was 'carrying' it." *People v Nimeth*, 236 Mich App 616, 622; 601 NW2d 393 (1999) (internal citation and quotation marks omitted). During deliberations, in response to a number of questions from the jury centered on how a person can carry a pistol in a vehicle, the trial court issued the following instruction:

> The law in Michigan provides that it is illegal to carry a pistol in any manner in a vehicle operated or occupied by a person without a concealed pistol license.
>
> One exception to this law is if the pistol owner meets all of the following criteria:
>
>> 1. The pistol is unloaded.
>>
>> 2. The pistol is in a closed cased designed for the storage of firearms. A glove compartment is not a case designed for the storage of firearms.
>>
>> 3. If the vehicle does not have a trunk, the closed case must be in an area of the vehicle that is not readily accessible to the occupants of the vehicle.
>
> If the pistol owner meets all of these criteria, he has not violated the law.

This instruction by the trial court was in reference to MCL 750.231a(e), which states that MCL 750.227(2) does not apply to a person carrying a pistol in a vehicle if the pistol "is unloaded in a closed case designed for the storage of firearms in a vehicle that does not have a trunk and is not readily accessible to the occupants of the vehicle."

Contrary to defendant's argument on appeal, this instruction regarding MCL 750.231a(e) did not bring new charges against defendant. Noncompliance with MCL 750.231a does not carry any penalty. Rather, MCL 750.231a merely provides an exception to the crime set forth in MCL 750.227, and, therefore, the failure to satisfy the requirements of MCL 750.231a(e) simply means that an exception to MCL 750.227 has not been met. Accordingly, the trial court's supplemental instructions did not bring unnoticed charges against defendant.

Similarly, defendant's argument that the trial court's supplemental instruction directed the jury to return a verdict of guilty is also without merit. Every criminal defendant has "the right to have *the jury*, rather than *the judge*, reach the requisite finding of guilty." *Sullivan v Louisiana*, 508 US 275, 277; 113 S Ct 2078; 124 L Ed 2d 182 (1993) (emphasis added; internal quotation marks and citation omitted). "Thus, although a judge may direct a verdict for the defendant if the evidence is legally insufficient to establish guilt, he may not direct a verdict for the State, no matter how overwhelming the evidence." *Id*.

In the instant case, the trial court's supplemental instruction merely outlined the law regarding a statutory exception to MCL 750.227(2) in response to questions by the jury. Defendant argues that the trial court went one step beyond doing this by stating, "A glove compartment is not a case designed for the storage of firearms." Yet, this statement does not

carry the weight suggested by defendant, as it merely provides a qualification—a correct one, at that—to the statutory exception. Defendant never argued that the glove compartment in his Yukon satisfied the statutory exception, and the supplemental instruction was provided only in response to the jury's inquiry, so at worst the trial court prevented the jury from going down an irrelevant rabbit hole. The trial court's supplemental instruction did not constitute plain error.

*Instruction Involving a Shooting Range.* Defendant next argues that the trial court erred by refusing to grant defendant's requested instruction on transporting a firearm en route to or from a shooting range. We disagree. "[A] trial court's determination whether a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006) (internal quotation marks and citation omitted). "When a defendant requests a jury instruction on a theory or defense that is supported by the evidence, the trial court must give the instruction." *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). "A defendant asserting an affirmative defense must produce some evidence on all elements of the defense before the trial court is required to instruct the jury regarding the affirmative defense." *People v Guajardo*, 300 Mich App 26, 34-35; 832 NW2d 409 (2013).

Defendant requested the trial court to instruct jurors regarding M Crim JI 11.15, which at the time of trial, stated as follows[2]:

> A person who is carrying a valid Michigan hunting license or proof of a valid membership in an organization having a pistol shooting range may legally carry a pistol to or from a hunting or shooting area. However, this pistol must be unloaded and be in a wrapper or container [in the trunk of the vehicle / and it must not be easily accessible to the people in the vehicle].

No evidence was presented at trial that defendant possessed a hunting license or was a member of an organization having a pistol shooting range. Moreover, no evidence was presented that showed that defendant was going to or coming from a shooting range. Rather, defendant had gone to the shooting range earlier in the day, went home for an undisclosed amount of time during which he forgot to remove his pistol, and then went back out. Further, the evidence presented at trial was that defendant stored his pistol unwrapped in the glove compartment. Defendant failed to produce sufficient evidence that M Crim JI 11.15 was applicable to the facts of this case, and the trial court did not abuse its discretion by refusing to issue that instruction.

*Fourth Amendment.* Finally, defendant argues that the stop in this case violated his Fourth Amendment rights. We disagree. Defendant did not file a motion to suppress at trial, so this issue is unpreserved. *People v Snider*, 239 Mich App 393, 406; 608 NW2d 502 (2000).

Generally, this Court reviews "de novo whether the Fourth Amendment was violated and whether an exclusionary rule applies." *People v Hyde*, 285 Mich App 428, 436; 775 NW2d 833 (2009). When unpreserved, however, this Court will review a claim of "constitutional error for

---

[2] M Crim JI 11.15 was incorporated into M Crim JI 11.14 in February 2016.

plain error affecting a defendant's substantial rights." *People v Kowalski*, 489 Mich 488, 505; 803 NW2d 200 (2011). There are three requirements to avoid forfeiture under the plain error rule: "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Carines*, 460 Mich at 763. To be found to affect substantial rights, the error must have prejudiced defendant, meaning "the error affected the outcome of the lower court proceedings." *Id*.

Under *Terry v Ohio*, 392 US 1, 22; 88 S Ct 1868; 20 L Ed 2d 889 (1968), "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." This type of brief detention, commonly referred to as a "*Terry* stop", does not violate the Fourth Amendment "as long as the officer can articulate a reasonable suspicion for the detention." *People v Custer*, 465 Mich 319, 327; 630 NW2d 870 (2001). To justify this type of stop, "the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity" based on "the totality of the circumstances." *United States v Cortez*, 449 US 411, 417-418; 101 S Ct 690; 66 L Ed 2d 621 (1981).

"[W]hen the circumstances involve an informant's tip, courts must examine whether the tipster's information contained sufficient indicia of reliability to provide law enforcement with a reasonable suspicion that would justify the stop." *People v Barbarich*, 291 Mich App 468, 474; 807 NW2d 56 (2011). To determine whether a tip "carried enough indicia of reliability to provide the officers with a reasonable suspicion," the Michigan Supreme Court mandated that courts consider "three related factors: (1) the reliability of the particular informant, (2) the nature of the particular information given to the police, and (3) the reasonability of the suspicion in light of the above factors." *People v Tooks*, 403 Mich 568, 577; 271 NW2d 503 (1978).

The tip in this case came from an anonymous caller. Whether an informant discloses his or her identity is not dispositive of whether the informant is reliable, *id.*, regardless of whether the informant provided a reason for remaining anonymous, *People v Horton*, 283 Mich App 105, 111-113; 767 NW2d 672 (2009). Rather, the "information provided to law enforcement officers by concerned citizens who have personally observed suspicious activities is entitled to a finding of reliability when the information is sufficiently detailed and is corroborated within a reasonable period of time by the officers' own observations." *Tooks*, 403 Mich at 577. Here, the tip described the make and model of defendant's vehicle, described the unique rims of the vehicle, informed the officers of the vehicle's location and heading, and stated that the informant had seen the passenger brandishing a firearm at passersby. This information was verified by officers shortly thereafter.

Based on the totality of the circumstances, the officers had reasonable suspicion to detain defendant to search for the possible weapon. The officers confirmed all the details of defendant's tip, including the color, make, and model of the car, the distinguishing feature of the large rims, and it was in the area described in the tip. Because the officers sufficiently corroborated the details of the tip within a reasonable period, the "information provided to [them] by concerned citizens who have personally observed suspicious activities is entitled to a finding of reliability." *Id*. This is the same conclusion reached by this Court in *Horton*, 283 Mich App at 113, where this Court reasoned that the stop based on an anonymous tip was supported by reasonable suspicion because the "tipster indicated that he had personally observed

an individual" with a gun and "described the make, model, and color of the suspect's vehicle," and this information was verified by officers shortly thereafter. Moreover, the fact that the anonymous tip in this case came from a 911 call, and not a face-to-face interaction like the tips in *Horton* and *Tooks*, is not dispositive given the advancements in the 911 emergency call system as outlined in *Navarette v California*, 572 US ___; 134 S Ct 1683, 1689-1680; 188 L Ed 2d 680 (2014) (stating that, based on technological and regulatory developments, a "caller's use of the 911 system is one of the relevant circumstances that, taken together," may justify an "officer's reliance on the information reported in the 911 call").

Defendant relies on *Florida v JL*, 529 US 266; 120 S Ct 1375; 146 L Ed 2d 254 (2000), to argue that the tip was not sufficient to justify the officers' stop because it was merely enough information to allow the officers to identify defendant's vehicle. The Court in *JL* reasoned that the tip was insufficient because the informant "neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L." *Id*. at 271. In contrast, the informant in the instant case indicated that he or she had witnessed defendant's passenger brandishing a weapon, showing that the caller had firsthand knowledge of defendant's criminal activity. Therefore, this case is distinguishable and defendant's argument is without merit.

Affirmed.

/s/ William B. Murphy
/s/ David H. Sawyer
/s/ Brock A. Swartzle