PEOPLE v HORTON

Docket No. 281412. Submitted February 4, 2009, at Detroit. Decided February 17, 2009. Approved for publication March 31, 2009, at 9:05 a.m.

The Wayne Circuit Court, Thomas E. Jackson, J., granted a motion by Lajamille Horton to suppress evidence and dismissed without prejudice charges against Horton of possession of a firearm by a felon, carrying a weapon in a vehicle, and possession of a firearm during the commission of a felony. The prosecution appealed, alleging that the court erred by determining that information about a person with a gun, which police officers received in person from a citizen who refused to identify himself, was inadequate to allow the officers to approach the defendant's vehicle, ask the defendant for identification, and order the defendant out of his vehicle, whereupon the officers discovered a pistol on the seat that had been occupied by the defendant.

The Court of Appeals *held*:

1. A tip made in person by a citizen who is unwilling to disclose his or her name is distinct from an anonymous telephone tip.

2. Three factors may be examined to determine whether information from a citizen informant carries enough indicia of reliability to provide police officers with a reasonable suspicion of criminal activity that justifies an investigatory stop: the reliability of the particular informant, the nature of the particular information given to the police, and the reasonableness of the suspicion in light of the first two factors.

3. Information provided to law enforcement officers by concerned citizens who have personally observed suspicious activities is entitled to a finding of reliability when the information is sufficiently detailed and is corroborated within a reasonable period by the officers' own observations.

4. Citizen-informants, with respect to their reliability, are not subjected to the same stringent test as persons who are themselves criminally involved or disposed because such citizen-informants are motivated by good citizenship and their information is imparted in the aid of law enforcement.

5. The totality of the circumstances provided reasonable suspicion for the police to briefly detain the defendant. The tipster stated that he personally observed an individual waving an "[U]zi-type" gun at a specific location approximately a mile away and that the tipster had just left that location. He described the make, model, and color of the suspect's vehicle. The descriptive information was detailed and was corroborated by the police in less than five minutes. The trial court erred in suppressing the evidence. The orders of the trial court must be reversed and the case must be remanded for the reinstatement of the charges.

Reversed and remanded.

1. SEARCHES AND SEIZURES — REASONABLE SUSPICION OF CRIMINAL ACTIVITY — INFORMANTS — CITIZEN-INFORMANTS — RELIABILITY OF INFORMATION PROVIDED TO POLICE.

Whether information supplied to the police by a citizen-informant carries enough indicia of reliability to provide police officers with a reasonable suspicion of criminal activity that justifies an investigatory stop depends on the reliability of the particular informant, the nature of the particular information given, and the reasonableness of the suspicion in light of the first two factors.

2. SEARCHES AND SEIZURES — INFORMANTS — CITIZEN-INFORMANTS — RELIABILITY OF INFORMATION PROVIDED TO POLICE.

Information provided to law enforcement officers by concerned citizens who have personally observed suspicious activities is entitled to a finding of reliability when the information is sufficiently detailed and is corroborated within a reasonable period by the officers' own observations.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, *Kym Worthy*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *David A. McCreedy*, Assistant Prosecuting Attorney, for the people.

Detroit Legal Aid and Defender Association (by *Nancy Shell*) for the defendant.

Before: WILDER, P.J., and CAVANAGH and MURRAY, JJ.

PER CURIAM. The prosecution appeals as of right a circuit court order granting defendant's motion to suppress evidence and dismissing, without prejudice, charges of possession of a firearm by a felon, MCL 750.224f, carrying a weapon in a vehicle, MCL 750.227, and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court concluded that information that the police received in person from a tipster who refused to identify himself was inadequate to allow the police to approach defendant in his car, ask for identification, and subsequently order him out of the car. We reverse and remand for reinstatement of the charges.

While on patrol at approximately 2:00 a.m., Detroit police officers Thomas Turkaly and Mecha Mathis were flagged down by a man who was pumping gas at a gas station. The man told them that a black male driving a burgundy Chevrolet Caprice was at the gas pumps at another gas station at Grand River and Wyoming in Detroit, which was approximately a mile away, and was waving an "[U]zi type weapon" with a long clip. The tipster reported that the man was approximately 30 years old and "seemed to be pretty nervous and upset." The tipster refused to provide his name.

Less than five minutes after speaking to the tipster, Officers Turkaly and Mathis arrived at the gas station at Grand River and Wyoming, where they observed a burgundy Chevrolet Caprice parked near the pumps. Defendant was in the driver's seat. The officers stopped their cruiser behind defendant's vehicle, activated their emergency lights to effect a traffic stop, and ordered defendant out of the vehicle. Officer Mathis asked defendant for a driver's license, registration, and proof of insurance. The testimony was equivocal regarding defendant's response to this request. When defendant

got out, however, Officer Turkaly saw on the driver's seat a Glock semi-automatic pistol with an extended magazine that protrudes, making it appear like "an [U]zi type weapon."

The trial court first considered whether the police action was justified without the anonymous tip. The court believed that the police properly could approach a driver and ask for his driver's license if they observed a car sitting at a gas station at 2:00 a.m. "with nothing else going on," and that the police would have the right to order the driver out of the car if the driver was unable to produce the documents. However, the court found that the record was unclear about whether defendant produced his license or other documentation.

The court then examined the effect of the tip. The court considered the prosecutor's argument that the tip was more reliable because it was made face-to-face, instead of by an anonymous telephone informant, but discounted that argument because the police did not get any information from the tipster, e.g., his license plate number. The court concluded that the face-to-face nature of the tip was insufficient to accord it more reliability than an anonymous telephone tip and, therefore, concluded that it was insufficient to justify defendant's brief detention. Accordingly, the court granted defendant's motion to suppress and dismissed the case without prejudice.

On appeal, the prosecution argues that this case is indistinguishable from *People v Tooks*, 403 Mich 568; 271 NW2d 503 (1978), which also involved a tip by an unidentified citizen.

"This Court reviews a trial court's factual findings in a suppression hearing for clear error. But the '[a]ppli-cation of constitutional standards by the trial court is

not entitled to the same deference as factual findings.' "
*People v Jenkins*, 472 Mich 26, 31; 691 NW2d 759 (2005)
(citations omitted).

As explained in *Jenkins, supra*:

> A brief detention does not violate the Fourth Amendment if the officer has a reasonably articulable suspicion that criminal activity is afoot. Whether an officer has a reasonable suspicion to make such an investigatory stop is determined case by case, on the basis of an analysis of the totality of the facts and circumstances. A determination regarding whether a reasonable suspicion exists must be based on commonsense judgments and inferences about human behavior. [*Id.* at 32 (citations and quotation marks omitted).]

In *Tooks*, a man approached the police and reported seeing a man show a gun to two other men. He described all three men by race and age. He further described two of the men by height and the clothing they wore and described the build of the man with the gun. Four or five blocks away, the police encountered three men matching the descriptions. The police patted down the defendant, who matched the description of the man with the gun, and discovered a pistol in his pocket. The Supreme Court concluded that the information provided by the anonymous informer provided reasonable suspicion for the stop and frisk. The Court identified three factors for examination to "determin[e] whether the information from the citizen-informant, carried enough indicia of reliability to provide the officers with a reasonable suspicion": "(1) the reliability of the particular informant, (2) the nature of the particular information given to the police, and (3) the reasonability of the suspicion in light of the above factors." *Tooks, supra* at 577. The Court rejected the defendant's argument that the fact that the citizen-informant was unknown and unnamed "necessarily

lead[s] to the conclusion that the information was neither reliable nor credible." *Id.* The Court explained:

> There is certainly nothing inherently unreliable about a citizen as opposed to a known informant giving information to the police. A regular informant can, and often does, provide police with detailed and accurate information and, because of a continuing relationship which at times exists, the police are in a position to judge the accuracy of such information based on a prior experience with the individual. However, informants by their very nature are often involved in or connected with criminal activity. To favor the known informant over the citizen in this case is illogical. We feel that information provided to law enforcement officers by concerned citizens who have personally observed suspicious activities is entitled to a finding of reliability when the information is sufficiently detailed and is corroborated within a reasonable period of time by the officers' own observations. As stated in a decision of the California Court of Appeals and cited as authority by the Michigan Court of Appeals, *People v Emmert*, 76 Mich App 26, 31, fn 1; 255 NW2d 757 (1977)[:]
>
> " ' "Citizen informants are not subjected with respect to their reliability to the same stringent test as persons who are themselves criminally involved or disposed upon the rationale that such citizens are motivated by good citizenship and their information is imparted in the aid of law enforcement. " ' " *People v Schulle*, 51 Cal App 3d 809, 813; 124 Cal Rptr 585 (1975).
>
> We find that there was ostensible reason for the citizen refusing to disclose his name and that there was no resulting inherent unreliability. [*Tooks, supra* at 577-578.]

With regard to the second factor, the Court referred to the detail and preciseness of the description and that it was verified by the police within a short time and a short distance from where the police received the information. *Id.* at 579-580. Concerning the third factor, the Court reasoned that "the knowledge that a gun was openly displayed in public does create a reasonable

suspicion of criminal activity sufficient to warrant the type of investigation including a pat-down search which occurred in this case, and that investigation is exactly the type of 'good police work' which is not only acceptable but necessary for the safety of the public." *Id.* at 581.

Defendant argues that the present case is distinguishable from *Tooks*, because the citizen-informant in that case gave a reason for not wanting to provide his name. Although the Court in *Tooks* referred to the fact that the informant gave a reason for not wanting to identify himself as a factor in assessing the reliability of the information provided, the decision does not indicate that either the presence or absence of a reason is dispositive of the question whether the informant's tip may be considered reliable.

Defendant also suggests that the Court's reliance, in *Tooks*, on the specificity of the information may no longer be valid in light of *Florida v J L*, 529 US 266; 120 S Ct 1375; 146 L Ed 2d 254 (2000). In that case, an anonymous caller reported to the police that a young black male wearing a plaid shirt and standing at a particular bus stop was carrying a gun. The caller did not indicate how he knew of the gun or provide any basis for believing that he had inside information about the subject. *Id.* at 271. An unspecified time after the police received the information, two officers were sent to the scene, and they arrived six minutes after the dispatch. The police saw three black males, including 16-year-old J L, who was wearing a plaid shirt. *Id.* at 268. The officers had no reason other than the tip to suspect illegal conduct. They searched the three males and found a gun in J L's pocket. *Id.* The Supreme Court held that the anonymous tip alone, which "lacked [even] moderate indicia of reliability," did not provide

reasonable suspicion justifying the police officers' stop and frisk of the suspect. *Id.* at 271, 274. "The anonymous call concerning J.L. provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility." *Id.* at 271. The Court rejected the view that the reliability of the information was sufficiently demonstrated because the police found a person matching the description at the location given by the informant, explaining:

> An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person. [*Id.* at 272.]

We conclude that *J L* does not undermine the analysis in *Tooks*, because courts have recognized that a tip made in person by a citizen who is unwilling to disclose his name is distinct from an anonymous telephone tip. Justice Kennedy's concurrence in *J L* discusses this distinction:

> If an informant places his anonymity at risk, a court can consider this factor in weighing the reliability of the tip. An instance where a tip might be considered anonymous but nevertheless sufficiently reliable to justify a proportionate police response may be when an unnamed person driving a car the police officer later describes stops for a moment and, face to face, informs the police that criminal activity is occurring. [*Id.* at 276 (Kennedy, J., concurring).]

See, also, *United States v Sanchez*, 519 F3d 1208, 1214 (CA 10, 2008), and *United States v Valentine*, 232 F3d 350, 354-355 (CA 3, 2000), and cases cited therein. In

*Tooks, supra* at 581, the Court specifically noted that it was "not dealing with an anonymous telephone tip to a police station . . . ."

Moreover, other facts of this case distinguish it from *J L*. The tipster in that case did not indicate how he knew that the individual at the bus stop was carrying a gun and did not supply any information to show that he had inside knowledge about the individual or the "concealed criminal activity." *J L, supra* at 272. In the present case, the tip concerned readily observable activity, and the tipster indicated the basis for his knowledge, i.e., his recent viewing of the activity. Cf. *People v Rollins*, 382 Ill App 3d 833, 840; 892 NE2d 21 (2008).

The totality of the circumstances provided reasonable suspicion for the police to briefly detain defendant in this case. The tipster indicated that he had personally observed an individual waving an "[U]zi-type" gun at a specific location approximately a mile away and had just left that location. He described the make, model, and color of the suspect's vehicle. The descriptive information was detailed, and the police corroborated it in less than five minutes. The facts fit the observation made in *Tooks, supra* at 577, that "information provided to law enforcement officers by concerned citizens who have personally observed suspicious activities is entitled to a finding of reliability when the information is sufficiently detailed and is corroborated within a reasonable period of time by the officers' own observations."

For these reasons, the trial court erred in granting defendant's motion to suppress. In light of our conclusion, we need not address the prosecution's additional argument regarding whether the trial court clearly erred by concluding that the record was unclear about

whether defendant produced his license or other documentation in response to Officer Mathis's request.

Reversed and remanded for reinstatement of the charges. We do not retain jurisdiction.