PEOPLE v PERREAULT

Docket No. 288540. Submitted November 10, 2009, at Lansing. Decided
January 19, 2010, at 9:05 a.m.

Michael J. Perreault was convicted following a bench trial in the
Grand Traverse Circuit Court, Thomas G. Power, J., of possession
with intent to deliver marijuana. He appealed, alleging that the trial
court erroneously refused to suppress evidence obtained when the
assistant principal of his high school in Traverse City, while in the
presence of a police officer, searched his vehicle in the parking lot of
the school while defendant was also present, but without his consent
and without a warrant. The search had occurred after the assistant
principal and the police officer were informed that the Grand Rapids
area Silent Observer anonymous tip hotline had received an anony-
mous tip indicating that several students, including defendant, were
selling drugs at the high school.

The Court of Appeals *held*:

1. The police may search a motor vehicle without a warrant if
they have probable cause to believe that evidence of a crime may be
found therein. School officials may search a student's person or
property on school premises on the lesser standard of reasonable
suspicion.

2. Reasonable suspicion requires articulable reasons and a par-
ticularized and objective basis for suspecting the particular person of
criminal activity. Whether a reasonable suspicion exists in a case
involving an anonymous tipster must be tested under the totality of
the circumstances with a view to the question whether the tip carries
with it sufficient indicia of reliability to support a reasonable suspi-
cion of criminal activity. An anonymous tip can provide reasonable
suspicion if it is considered along with a totality of the circumstances
that show the tip to be reliable. But, alone, without any indicia of
reliability or means to test the informant's knowledge or credibility,
an anonymous tip is generally insufficient.

3. The anonymous tip was the only basis for the search in this
case. The anonymous tip contained little information concerning
defendant and was vague. There were no other circumstances to be
viewed.

4. Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before governmental authorities may act against a suspect. The tip in this case is an example of such a tip. The tip itself did not provide a sufficient basis to form a reasonable suspicion necessary for the search of defendant's vehicle. The search was unconstitutional and the trial court's order denying suppression of the evidence must be reversed and the case must be remanded to the trial court for further proceedings.

Reversed and remanded.

O'CONNELL, J., dissenting, stated that the anonymous tip, considered in light of the totality of the circumstances, provided the assistant principal reasonable suspicion that defendant was trafficking in drugs on school property and justified the assistant principal's search of defendant's vehicle. The tip, considered in its entirety, was sufficiently detailed to provide indicia of reliability. There was also information corroborating the tip, aiding in the determination that a reasonable suspicion existed to search defendant's vehicle. The tip and the corroborating information provided the assistant principal a particularized suspicion that defendant was engaging in criminal activity in his vehicle on school grounds and that contraband was present in the vehicle. The tip carried with it sufficient indicia of reliability to support a reasonable suspicion of criminal activity. The assistant principal's search did not constitute a violation of defendant's rights. The order denying suppression of the evidence should be affirmed.

1. SEARCHES AND SEIZURES — SCHOOLS — REASONABLE SUSPICION.

The police may search a motor vehicle without a warrant if they have probable cause to believe that evidence of a crime can be found therein; school officials may search a student's person or property on school premises on the lesser standard of reasonable suspicion; reasonable suspicion requires articulable reasons and a particularized and objective basis for suspecting the particular person of criminal activity.

2. SEARCHES AND SEIZURES — ANONYMOUS TIPSTERS — REASONABLE SUSPICION.

Whether reasonable suspicion for a search exists in a case involving an anonymous tipster must be tested under the totality of the circumstances with a view to the question whether the tip carries with it sufficient indicia of reliability to support a reasonable suspicion of criminal activity; an anonymous tip can provide reasonable suspicion if it is considered along with a totality of the circumstances that show the tip to be reliable, but, alone, without

> any indicia of reliability or means to test the informant's knowledge or credibility, an anonymous tip is generally insufficient to support a reasonable suspicion.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, and *Alan R. Schneider*, Prosecuting Attorney, for the people.

*James M. Hunt*, for defendant.

Before: TALBOT, P.J., and O'CONNELL and DAVIS, JJ.

DAVIS, J. Defendant was convicted by the trial court of possession with intent to deliver marijuana, MCL 333.7401(2)(d)(*iii*). Defendant appeals as of right, arguing that the trial court erred by refusing to suppress evidence obtained in a search of his vehicle conducted without a warrant. We reverse. This appeal has been decided without oral argument pursuant to MCR 7.214(E).

Defendant was a student at Traverse City Central High School. On April 24, 2008, the Grand Rapids area Silent Observer[1] anonymous tip hotline received an anonymous tip "regarding a VCSA[2] at Traverse City Central High School." The tipster stated that he had previously been friends with a drug dealer at the school but that the tipster had given up drugs and now wished to report his former friend. The tipster described that friend's trafficking as "the largest threat to the school," but the tipster decided to also provide the names of and details about other "big dealers," one of whom was stated as being defendant. The tipster provided extensive information about his former friend, and less-

---

[1] <http://www.silentobserver.org> (accessed January 15, 2010).

[2] Presumably, this stands for "violation of the controlled substances act."

detailed information about the other alleged dealers. Defendant was simply described as a male caucasian junior who sells marijuana "from school, his truck and East Bade [sic] Park in Traverse City." The Silent Observer report was forwarded to the Traverse City Police Department.

A few days later, Officer Evan Warsecke, who served as a liaison officer for the school, forwarded the report to Rick VanderMolen, assistant principal at the school. The only further investigation taken by Officer War-secke was to verify the vehicles registered to the named dealers. However, at some point before the search of defendant's vehicle, a search of the principal suspect (the tipster's former friend) was conducted, and no contraband was found. VanderMolen testified that, other than a vague and undefined "concern" expressed by "a counselor from East Junior High" about "some behavior at the junior high," but "not talking about specifically marijuana," he had no other information about defendant or about defendant's involvement with marijuana. Officer Warsecke likewise testified that he had no information about defendant or about defendant's involvement with drugs other than the anonymous tip.

Nevertheless, more than a week after receiving the anonymous tip, VanderMolen decided to search defendant's vehicle. VanderMolen asked Officer Warsecke and some other school officials to accompany him as he searched defendant's vehicle. Defendant did not consent to the search, although defendant was present during the search. Officer Warsecke stood by while the assistant principal conducted the search. VanderMolen found marijuana in a bag behind a seat, whereupon defendant was arrested. Defendant moved to suppress that evidence as the fruit of an

unconstitutional search. The trial court denied the motion, finding that the anonymous tip alone was sufficient to constitute reasonable suspicion, given the level of detail the tip contained.

Evidence obtained in violation of a suspect's rights under the Fourth Amendment of the United States Constitution is subject to suppression at trial. *People v Cartwright*, 454 Mich 550, 557-558; 563 NW2d 208 (1997). See also *Mapp v Ohio*, 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081 (1961) (incorporating the Fourth Amendment against the states under the Fourteenth Amendment). In reviewing a trial court's decision following a suppression hearing, this Court reviews the trial court's factual findings for clear error, but reviews the legal conclusions de novo. See *People v Daoud*, 462 Mich 621, 629-630; 614 NW2d 152 (2000).

The police may search a motor vehicle without a warrant if they have probable cause to believe that evidence of a crime may be found therein. *People v Kazmierczak*, 461 Mich 411, 418-419; 605 NW2d 667 (2000). However, school officials may search a student's person or property on school premises on the lesser standard of reasonable suspicion. See *New Jersey v TLO*, 469 US 325, 341-342; 105 S Ct 733; 83 L Ed 2d 720 (1985). Defendant suggested in the trial court that the presence of a police officer during the search might raise the applicable standard, but because that argument was not raised on appeal, we do not express any opinion thereon. In any event, it is unnecessary for us to do so in light of our conclusions in this matter.[3]

---

[3] Where we part with the dissent for purposes of this analysis is the dissent's view, as reflected in footnote 2 of the dissenting opinion, that there is no distinction or difference between possession of marijuana and possession of a bomb or an assault weapon on school property.

Reasonable suspicion requires " 'articulable reasons' " and "a particularized and objective basis for suspecting the particular person . . . of criminal activity." *United States v Cortez*, 449 US 411, 417-418; 101 S Ct 690; 66 L Ed 2d 621 (1981). In "a case involving an *anonymous* tipster," whether reasonable suspicion exists "must be tested under the *totality of the circumstances* with a view to the question whether the tip carries with it *sufficient indicia of reliability* to support a *reasonable suspicion* of criminal activity." *People v Faucett*, 442 Mich 153, 169; 499 NW2d 764 (1993) (emphasis in original), citing *Alabama v White*, 496 US 325; 110 S Ct 2412; 110 L Ed 2d 301 (1990). An anonymous tip *can* provide reasonable suspicion *if* it is considered along with a "totality of the circumstances" that show the tip to be reliable. But alone, without any " 'indicia of reliability' " or " 'means to test the informant's knowledge or credibility,' " an anonymous tip is generally insufficient. *People v Horton*, 283 Mich App 105, 111-113; 767 NW2d 672 (2009), citing and quoting *Florida v J L*, 529 US 266, 271-272, 274; 120 S Ct 1375; 146 L Ed 2d 254 (2000).

Here, the anonymous tip was the only basis for the search. Both the assistant principal who conducted the search and the police officer who attended the search testified that the anonymous tip was the only basis for the search.[4] The prosecution points out that the tip

---

[4] During VanderMolen's cross-examination at defendant's preliminary examination, the following exchange took place:

> *Q.* Was there anything in particular that happened that day that you picked that day to conduct the search?
>
> *A.* No.
>
> *Q.* So it wasn't based upon any activity or information that you had other than what was in the Silent Observer?

provided considerable detail about one of the alleged dealers, but that particular dealer was searched and found not to have any contraband on his person. The prosecution further argues that the tip is reliable because the tipster showed that he was well-intended and reliable by professing to be motivated by one of the alleged dealers' selling to another friend and an ex-girlfriend, and also because the tipster took care to distinguish between a dealer and that dealer's physically identical-looking brother. However, these are merely assertions regarding the information contained *within* the anonymous tip and therefore are not corroborating circumstances. Furthermore, the anonymous tip contained little information concerning defendant. Although the tip sheet states that defendant was "[s]een" trafficking in marijuana, and specifies three locations, it does not indicate whether the informant had witnessed the trafficking or was relaying information heard secondhand.

Therefore, the anonymous tip was vague concerning defendant and could not be viewed with a "totality of the circumstances" because there were no other circumstances. Indeed, the only other possible circumstance weighed *against* the tip's being reliable. "Some

---

A. Yes.

\* \* \*

Q. And you were searching his vehicle solely on the basis of the information which you had from the Silent Observer?

A. Yes.

VanderMolen also stated that he had "no idea" who had called in the anonymous tip or how reliable the information therein was. Officer Warsecke testified that the only information he passed on to Vander-Molen about defendant was the contents of the anonymous tip.

tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation" before governmental authorities may act against a suspect. *White, supra* at 329 (quotation marks and citation omitted). This is an example of such a tip. The tip alone did not provide a sufficient basis to form reasonable suspicion necessary for the search of defendant's vehicle, and the search was based on nothing more than the tip. The search was therefore unconstitutional, and the trial court should have suppressed the evidence as the fruit of an illegal search. See *Wong Sun v United States*, 371 US 471, 487-488; 83 S Ct 407; 9 L Ed 2d 441 (1963); *Cartwright, supra*.

Although it appears that the prosecution would not be able to proceed without the evidence that should have been suppressed, we decline to make that presumption conclusive. We express no view as to the resolution of any other aspect of, or issue in, this case. The trial court's order denying suppression of the evidence seized from defendant's vehicle is reversed, and the matter is remanded for further proceedings as the trial court deems appropriate. We do not retain jurisdiction.

TALBOT, P.J., concurred.

O'CONNELL, J. (*dissenting*). I respectfully dissent.

I would affirm the decision of the learned trial court. The sole issue in this case is whether the assistant principal at Traverse City Central High School had reasonable suspicion that contraband would be found in defendant's truck. It is a well-accepted principle of law that school officials may search a student's person or property on the school premises pursuant to the lesser standard of "reasonable suspicion." See *New Jersey v TLO*, 469 US 325, 341-343; 105 S Ct 733; 83 L Ed 2d

720 (1985). In *People v Champion*, 452 Mich 92, 98; 549 NW2d 849 (1996), our Supreme Court, citing *United States v Sokolow*, 490 US 1; 109 S Ct 1581; 104 L Ed 2d 1 (1989), noted, "Reasonable suspicion entails something more than an inchoate or unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause."

An anonymous tip can provide reasonable suspicion if it is considered along with a "totality of the circumstances" that shows the tip to be reliable. *People v Faucett*, 442 Mich 153, 169; 499 NW2d 764 (1993). Further, the tip must carry with it sufficient indicia of reliability to support a reasonable suspicion of criminal activity. *Id*. However, a sufficiently detailed tip may provide reasonable suspicion of criminal activity, especially (but not necessarily) when there is independent corroboration of some of the facts. *Id*. at 170-172. However, the *police* may only search a motor vehicle without a warrant if they have probable cause to believe that evidence of a crime may be found therein. *People v Kazmierczak*, 461 Mich 411, 418-419; 605 NW2d 667 (2000). Taken together, this caselaw leads to one obvious conclusion: although probable cause is necessary to permit a *police* search of a motor vehicle, a school official only needs to have "reasonable suspicion" to search a student's motor vehicle when it is located on the school premises.

In this case, Rick VanderMolen, the assistant principal at Traverse City Central High School, had been provided with a detailed anonymous tip from the "Silent Observer" program that implicated defendant in drug trafficking. In this case, the only issue is whether the anonymous tip, considered in light of the totality of the circumstances, provided VanderMolen reasonable suspicion that defendant was trafficking in drugs on

school property and, consequently, justified his search of defendant's vehicle.[1] The trial court found that, on the basis of the totality of the circumstances, the tip provided sufficient indicia of reliability to support VanderMolen's reasonable suspicion of criminal activity. I agree.

The trial court explained why the totality of the circumstances created a reasonable suspicion of criminal activity:

> [W]ith respect to Mr. Perreault, [the report] indicates that he traffics in marijuana. That the anonymous witness said that they had seen him actually sell it and that he sells from school, his truck and in East Bay Park in Traverse City.
>
> Well, the truck—actually, I guess it was an S-10, was the testimony—was parked in the parking lot of the Traverse City Central [High] School. So, I guess, is that enough to create a reasonable suspicion that—that Mr. Perreault may be involved in drug dealing and that there might be evidence in his truck when this anonymous report, which is quite detailed, specifically says he sells from his truck. That would seem to me to create a reasonable suspicion.

The trial court then distinguished the standard applied to school officials from the probable cause requirement for a search warrant, stating:

> Now, if we're talking about validating an affidavit for a search warrant, it might require some corroboration in order to make it sufficient to reach the level appropriate to support a search warrant. . . . [R]easonable suspicion is a lesser standard.

A trial court's factual findings in a ruling on a motion to suppress evidence are reviewed for clear error, and

---

[1] Defendant does not challenge on appeal the application of the "reasonable suspicion" standard as the proper standard that must be met to permit a school official to search a student's vehicle located on school grounds.

the trial court's interpretation of the law or application of a constitutional standard is reviewed de novo. *People v Attebury*, 463 Mich 662, 668; 624 NW2d 912 (2001). In this case, I cannot find any violation of the constitutional standard, nor can I conclude that the trial court committed clear error.[2]

The tip named four students who were selling drugs on school property. The tipster said that he was aware that these four students were the "big sellers" at Traverse City Central High School because the tipster had previously been involved in drug activity and one of the "big sellers," a friend of the tipster, had begun selling marijuana to the tipster's friends and ex-girlfriend. The tipster said that he had seen all four "big sellers" selling drugs. The tipster warned that drugs were being sold on school property and gave details of how the drugs were being sold. The tipster indicated that defendant "[s]ells from school, his truck and East

_____

[2] If the anonymous tip in question were a bomb threat or a claim that a weapon was located in the defendant's vehicle, I suspect that school officials, most parents, and the majority in this case would conclude that because of the imminent threat, exigent circumstances, and the threat of harm to all students in the school, the tip alone would be enough to confer "reasonable suspicion" and justify a search of a student's vehicle. I would also agree, but I see the aforementioned hypothetical as presenting a distinction without a difference. In my opinion, the presence of drugs on school property presents a similarly serious risk of harm to students that parents, school officials, and this Court should not accept. More importantly, the standard that a school official would be permitted to apply in order to justify a search, "reasonable suspicion," is the same in both situations. The standard does not change simply because the contraband in question is viewed by some as "less threatening."

On a separate note, some school districts have an official school policy that grants school officials "implied consent" to search a student's property while that student or that student's belongings are located on school property. The lower court record is devoid of any evidence regarding whether Traverse City Area Public Schools has such a contractual relationship with parents or students.

Bade [sic, Bay] Park in Traverse City," and indicated that he had seen defendant sell marijuana.[3] The tipster also noted that the drug trafficking that he was reporting was the largest threat to the school.

Admittedly, the tipster provided more detailed information about one of the other "big sellers," including information that this "big seller" was suspected of selling drugs to a freshman student and kept "a machete in the glove compartment of his blue Ford Explorer." However, the tipster also provided identifying information concerning the other "big sellers," including their names, their grades at school, and where they sold drugs. In particular, the tipster specified that defendant drove a truck and that another "big seller" drove a GMC Yukon. I believe that the tip, considered in its entirety, is sufficiently detailed to provide indicia of

---

[3] The Silent Observer screener who took the tipster's call filled out a tip sheet listing information that she had solicited from the tipster. When asking about defendant's involvement in drug activity and receiving the tipster's responses, she recorded the following information:

**DRUGS**

**Regarding:** Trafficking    **Type:** Marijuana    **Witnessed:** Seen

This information indicates that when asked whether he had witnessed the criminal activity, the tipster said that he had seen defendant trafficking in marijuana. If the tipster was reporting this information secondhand, I would reasonably assume that a trained call screener would note that the information was secondhand on the tip sheet, and not assume that recording the word "seen" would imply that this information was secondhand. In addition, I note that when the call screener recorded information about the "big seller" who was a friend of the tipster and about whom the tipster had significant firsthand information, she indicated that the tipster had "seen" him trafficking in marijuana and ecstasy. I believe that this provides an additional indication that the call screener's use of the word "seen" to fill in the category **"Witnessed"** indicates that the tipster had admitted seeing these "big sellers" engage in illegal activity firsthand.

reliability. I do not think that the majority's conclusion that "corroborating circumstances" outside the tip must be present for an anonymous tip to be considered reliable, no matter how detailed and internally consistent the tip itself might be, is necessarily supported by the prevailing caselaw.

Regardless, there was information corroborating this tip, aiding in a determination that a reasonable suspicion existed to search defendant's vehicle. When Officer Evan Warsecke, who served as a police liaison officer for the school, initially received the "Silent Observer" report, he verified that defendant and the seller with the GMC Yukon drove the vehicles described and noted this on the report. He also verified that another "big seller" who was reported as not having a vehicle did not, in fact, have a vehicle registered with the school. VanderMolen also independently knew that defendant drove a truck, as was stated in the report, because defendant had driven a truck recklessly in the parking lot earlier in the school year, and VanderMolen had discussed this behavior with defendant and his mother. Further, defendant's name appeared to be associated with some drug-related problems that were occurring at a local junior high school. Finally, just before VanderMolen began his search of the vehicle, he noted that he could see a plastic bag, later found to contain defendant's marijuana and related drug-trafficking supplies, through the truck window, although he could not determine from outside the truck what was inside that bag.

I believe that this information, taken together, was sufficient to provide VanderMolen a "reasonable suspicion" that defendant was engaged in illegal activity on school grounds and to authorize his search of defendant's truck. Not only was the tip quite detailed and internally

consistent, indicating its trustworthiness,[4] but information in the tip was also corroborated.[5] VanderMolen did not search defendant's truck because he had a "hunch" that contraband might be found therein. Instead, the tip and corroborating information provided Vander-Molen with a particularized suspicion that defendant was engaging in criminal activity in his truck on school grounds, and that contraband was present in the truck. Accordingly, the tip carried with it sufficient indicia of reliability to support a reasonable suspicion of criminal activity, and VanderMolen's search did not constitute a violation of defendant's rights.

Defendant also indicates in his brief on appeal that the tipster likely did not report on defendant's wrongdoing because he had a vendetta against defendant. Instead, defendant claims that the tipster primarily wished to turn in his friend, and his revelation that defendant was also involved in drug dealing was "merely an afterthought that the tipster had no intention of revealing until making the call." This description of the tipster's statements regarding defendant as being a "mere afterthought" undermines the notion that the tipster might have wished to falsely accuse defendant of wrongdoing and, serendipitously, provides an additional indication, based on the totality of the circumstances, that the tipster's information concerning defendant was valid and that VanderMolen had a reasonable suspicion to search defendant's vehicle.[6]

---

[4] It is well established that inconsistencies in an individual's statement can often indicate that the statement is false. There is no such indication of inconsistencies in this anonymous tip.

[5] VanderMolen also appropriately chose to search defendant's truck, as opposed to defendant's person or locker, because as indicated in the tip, the truck was the locus of the criminal activity and, hence, the source of danger to the school.

[6] It appears, instead, that the tipster provided all the information he could on these other "big sellers" and lacked a motivation to lie when

In some ways, I find this case to be analogous to *People v Goforth*, 222 Mich App 306; 564 NW2d 526 (1997), and the doctrine of *in loco parentis*. In *Goforth*, the defendant claimed that his parents did not have the legal right to allow the police to search his bedroom in his parents' house, where evidence of marijuana trafficking activity was found, because he had "a legitimate expectation of privacy" in his bedroom. *Id*. at 308. This Court concluded that there is no absolute rule precluding parents from validly waiving their child's privilege against an unreasonable search of the child's bedroom in the parents' home, and concluded that the facts of the case indicated that an officer could reasonably believe that the defendant's mother had common authority over the defendant's bedroom and could consent to the search. *Id*. at 315-316. In a separate concurrence, I noted, "excepting the most unusual of situations, a parent always has the right to consent to the search of the bedroom of a child residing with that parent." *Id*. at 317 (O'CONNELL, J., concurring). The parent, not the child, is in charge of the household; the child is not in charge of the parent.

A similar relationship exists with schools. School administrators act *in loco parentis*[7] with students, and "[s]chools . . . are provided a tremendous measure of

doing so. Of course, the presence of marijuana and related trafficking supplies in defendant's truck proves the tipster's statement correct.

[7] *In loco parentis* is Latin for " 'in the place of a parent' " and is defined as "[o]f, relating to, or acting as a temporary guardian or caretaker of a child, taking on all or some of the responsibilities of a parent." Black's Law Dictionary (8th ed). "The [United States] Supreme Court has recognized that during the school day, a teacher or administrator may act *in loco parentis*. See *Vernonia Sch. Dist. v. Acton*, 515 U.S. 646, 115 S.Ct. 2386 (1995)." *Id*. A "person *in loco parentis*" is defined as "[a] person who acts in place of a parent, either temporarily (as a schoolteacher does) or indefinitely (as a stepparent does); a person who has assumed the obligations of a parent without formally adopting the child." *Id*.

.

authority because of their responsibilities *in loco parentis . . . ." Baker v Couchman*, 271 Mich App 174, 203; 721 NW2d 251 (2006) (O'CONNELL, J., concurring in part and dissenting in part), rev'd 477 Mich 1097 (2007) (adopting the partial dissent of O'CONNELL, J.).

Admittedly, the doctrine of *in loco parentis* does not obviate all of a student's Fourth Amendment protections in a public school setting. *TLO, supra* at 336-337. Yet the doctrine helps illustrate the tension placed on school administrators, who must balance their limitations as public employees with their responsibilities to protect students from the myriad increasingly dire threats facing young people today.[8] Although it is a delicate balance between preserving order in the school and safeguarding a student's individual rights, this case does not present a close question. Students know that drugs, weapons, and contraband are not permitted on school grounds. Bringing these items onto school property is simply an unacceptable practice in our society and at our schools.[9] School officials have a responsibility to police the school and create a safe environment for all students, and in this case, VanderMolen performed his duty admirably. He had a reasonable suspicion that defendant was undermining the health and safety of the student body by trafficking marijuana on school grounds. VanderMolen, acting within the confines of the law, did what was necessary to protect the students of Traverse City Central High School from a drug dealer. His actions and diligence should be applauded.

---

[8] Perhaps it is not coincidental that the traditional *in loco parentis* standard applied in public schools was weakened just as drugs and violence began their ascendancy as major threats within our schools. See *TLO, supra.*

[9] Many schools even post signs in their student parking lots to this effect.