*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

VICTORIA CATHERINE PAGANO,

Defendant-Appellee.

UNPUBLISHED
May 28, 2019

No. 340859
Huron Circuit Court
LC No. 17-105478-AR

Before: MURRAY, C.J., and GADOLA and TUKEL, JJ.

PER CURIAM.

The prosecution appeals by leave granted[1] the order of the circuit court affirming the order of the district court that dismissed the charges filed against defendant, being operating a motor vehicle while intoxicated with a child as passenger, MCL 257.625(7)(a)(*i*), and open intoxicants in a motor vehicle, MCL 257.624a. We reverse and remand for reinstatement of the charges.

## I. FACTS

On July 31, 2016, Huron County Sheriff's Deputy Eric Hessling was informed by the department's central dispatcher that an unidentified person[2] had called in a tip, stating that a woman, who appeared intoxicated, had just driven away in a car with two children as passengers. The caller provided the make, model, color, and license plate number of the vehicle, and indicated that the driver was travelling westbound on M-25 near the Port Crescent State Park, having left the

---

[1] *People v Victoria Catherine Pagano*, unpublished order of the Court of Appeals, entered April 20, 2018 (Docket No. 340859).

[2] The record does not reveal whether the caller identified himself or herself; however, the officer apparently did not know the identity of the tipster when he stopped defendant.

park's public access area. The caller stated that the woman had been yelling at her children and behaving obnoxiously, and appeared to be intoxicated.[3] The officer drove to the area described by the caller, and saw the vehicle matching the caller's description leaving the parking lot of a convenience store.[4]

The officer followed behind the vehicle in his patrol car, but did not observe any traffic violations. He stopped the vehicle, which defendant was driving with her two children inside. Defendant was thereafter charged with possession of open intoxicants in a motor vehicle, MCL 257.624a, and operating a motor vehicle while intoxicated with a child as passenger, MCL 257.625(7)(a)(*i*). The officer later testified that he stopped the vehicle based strictly on the information he received from the police dispatcher conveying the caller's tip, and that he stopped the vehicle 25 minutes after the call was first received by the dispatcher.

Defendant moved before the district court to dismiss the charges, contending that the traffic stop was impermissible because it was not supported by probable cause. Defendant argued that no one had witnessed her engage in criminal activity and the officer had stopped her solely based on a lay person's observation of her behavior. The district court dismissed the case, finding that no probable cause existed for the officer to stop defendant's vehicle, reasoning that the caller's tip, without more, was insufficient to justify the stop. The prosecution appealed the dismissal to the circuit court, which affirmed, concluding that the officer did not have a reasonable and articulable suspicion to justify the stop. The prosecution now appeals to this Court.

## II. DISCUSSION

The prosecution contends that the district court erred in dismissing the charges against defendant, and that the circuit court erred in affirming the decision of the district court. Initially, we note that defendant's motion to dismiss before the district court was essentially a motion to suppress any evidence obtained as a result of the stop, which defendant contended was an unreasonable search. We review de novo the determination that evidence was subject to suppression. *People v Barbarich*, 291 Mich App 468, 471; 807 NW2d 56 (2011).

The United States Constitution and the Michigan Constitution protect citizens from unlawful searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. A traffic stop is considered to be a "seizure" of the vehicle's occupants, and therefore must be conducted in accordance with the Fourth Amendment. *Brendlin v California*, 551 US 249, 255; 127 S Ct 2400; 168 L Ed 2d 132 (2007). When a search is conducted without a warrant, it is presumed to be unreasonable, and therefore unconstitutional. *Barbarich*, 291 Mich App at 472. However, under *Terry v Ohio*, 392 US 1, 22; 88 S Ct 1868; 20 L Ed 2d 889 (1968), "a police officer may in

---

[3] This information represents the officer's testimony summarizing the information provided by the caller; the record does not contain a recording of the 911 call.

[4] The parties do not dispute that the person described by the caller was, in fact, defendant, and that she was driving the vehicle described by the caller.

appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." A brief investigatory stop is permitted "when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.' " *Navarette v California*, 572 US 393, 396-397; 134 S Ct 1683; 188 L Ed 2d 680 (2014), quoting *United States v Cortez*, 449 US 411, 417-418; 101 S Ct 690; 66 L Ed 2d 621 (1981).

Our Supreme Court has explained that law enforcement officers may make a valid investigatory stop when they possess "reasonable suspicion that crime is afoot," and that a *Terry* stop does not violate the Fourth Amendment if the officer can "articulate a reasonable suspicion for the detention." *People v Custer*, 465 Mich 319, 327; 630 NW2d 870 (2001). Thus, for a traffic stop to be justified, the officer stopping the vehicle must have "an articulable and reasonable suspicion that a vehicle or one of its occupants is subject to seizure for a violation of law."[5] *People v Simmons*, 316 Mich App 322, 326; 894 NW2d 86 (2016) (quotation marks and citation omitted).

Whether an officer in a particular case has an articulable and reasonable suspicion depends on the facts and circumstances of that case. *People v Kavanaugh*, 320 Mich App 293, 301; 907 NW2d 845 (2017). Reasonable suspicion takes into account the totality of the circumstances, and depends upon both the content of information possessed by the officer and its degree of reliability. *Navarette*, 572 US at 397. In determining the reasonableness of an officer's suspicion, we view the circumstances "as understood and interpreted by law enforcement officers, not legal scholars." *People v Oliver*, 464 Mich 184, 192; 627 NW2d 297 (2001). Thus, when determining whether a defendant's Fourth Amendment rights have been violated in the context of a *Terry* stop, we consider the circumstances "in light of commonsense judgments and inferences about human behavior, . . . and should be careful not to apply overly technical reviews of a police officer's assessment of whether criminal activity is afoot." *Barbarich*, 291 Mich App at 474 (citations omitted). In sum, "[a]lthough a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is 'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause." *Navarette*, 572 US at 397, quoting *United Stated v Sokolow*, 490 US 1, 7; 109 S Ct 1581; 104 L Ed 2d 1 (1989) (citation and some quotations marks omitted).

When an officer's stop is based upon an informant's tip, we consider whether the tip contained "sufficient indicia of reliability to provide law enforcement with a reasonable suspicion that would justify the stop." *Barbarich*, 291 Mich App at 474. To do so, we consider (1) the reliability of the informant, (2) the nature of the informant's information, and (3) the reasonableness of the suspicion in light of those factors. *People v Tooks*, 403 Mich 568, 577;

---

[5] We note that the district court in this case did not cite the correct standard, finding that no probable cause existed for the officer to stop defendant's vehicle. The circuit court stated the proper standard, that the officer needed a reasonable and articulable suspicion to justify the stop.

271 NW2d 503 (1978). [6]  Our Supreme Court has noted that the "information provided to law enforcement officers by concerned citizens who have personally observed suspicious activities is entitled to a finding of reliability when the information is sufficiently detailed and is corroborated within a reasonable period of time by the officer's own observations." *Id*. Whether an informant provides his or her name is not dispositive of whether the informant is reliable. See *People v Horton*, 283 Mich App 105, 111-113; 767 NW2d 672 (2009).

Defendant argues that at the time of the traffic stop, the officer had not witnessed her driving in an unsafe or improper manner, nor did the officer see her consume alcohol. In fact, the officer testified that his information came solely from the police dispatcher who conveyed to him the information reported by the caller. We note, however, that there is no prohibition against an officer making a traffic stop solely on the basis of information provided by an informant. Had the officer witnessed a traffic violation, he would have been justified in stopping defendant without the caller's tip. As this Court observed in *Barbarich*, "[h]ad the officer waited to personally observe defendant engage in dangerous and erratic driving, his suspicion would have surpassed a reasonable, articulable suspicion and become probable cause to seize defendant and issue an appropriate citation." *Barbarich*, 291 Mich App at 481-482. "It is not vital that [the officer] knew exactly what crime was being committed or would be charged when she decided to stop defendant, only that the circumstances justified the stop." *People v Estabrooks*, 175 Mich App 532, 538-539; 438 NW2d 327 (1989).

In this case, we are not persuaded that the tip was insufficiently reliable. Less information is required to justify a traffic stop when the informant's tip relates to potentially dangerous driving because the interest in ensuring public safety on a roadway is high compared with the minimally invasive nature of a traffic stop. See *Barbarich*, 291 Mich App at 479. Although the quantity of the tip information must be sufficient to identify the vehicle and to support an inference of a traffic violation, when public safety on the roadway is at stake, less is required with regard to the reliability of the tip, and it is enough "if law enforcement corroborates the tip's innocent details." *Id*. at 479-480.

Here, the caller's tip accurately provided the make, model, color, and license plate number of defendant's vehicle, and accurately described the approximate location of the vehicle. The circuit court in this case acknowledged that the caller's accurate information regarding the vehicle contained sufficient indicia of reliability, but held that to justify a stop, something more must be added to the informant's information, such as the witnessing of a traffic violation.

---

[6] At first glance, the continuing viability of the holding of *Tooks* appears questionable in light of *Florida v JL*, 529 US 266; 120 S Ct 1375; 146 L Ed 2d 254 (2000), which concludes in a case factually similar to *Tooks* that the anonymous tip lacked the requisite indicia of reliability. This Court in *People v Horton*, 283 Mich App 105, 112; 767 NW2d 672 (2009), however, concluded that *JL* does not undermine the analysis of *Tooks*, because in *Tooks* the informant provided the information in person rather than by telephone. In any event, *JL* does not cast doubt on the continuing applicability of the test set forth in *Tooks* to assess the reliability of a tip. See, e.g., *Barbarich*, 291 Mich App at 474.

Indeed, in both *Navarette* and *Barbarich* the informant in each case reported to police that the defendant had almost hit them or run them off the road, which arguably suggested to the investigating officers that possible criminal activity, i.e., drunk driving, was afoot.

Here, the informant did not report witnessing erratic driving by the defendant; instead, the informant in this case reported witnessing a person who appeared to be intoxicated get in a car and drive away, which, if true, is criminal activity regardless of her ability to pilot her vehicle. In other words, in this case, as in *Barbarich* and *Navarette*, the informant provided a sufficiently reliable report to justify an investigatory stop by the officer to ascertain whether contemporaneous and ongoing criminal activity, i.e., drunk driving, was occurring. It is true that defendant's behavior in this case could also be consistent with legal behavior; not everyone who appears intoxicated is, in fact, intoxicated. Similarly, not every driver who swerves is intoxicated. But even though a person's actions might also be consistent with legal behavior as well as with drunk driving, the reported behavior in this case was enough to create the inference of illegal behavior. See *Barbarich*, 291 Mich App at 481.

In this case, the circuit court reasoned that the tip would have been more reliable if, rather than describing the defendant's behavior as "intoxicated," the caller instead had said, for example, that defendant had slurred speech or the inability to stand, from which the officer could have drawn his own conclusion that defendant potentially was intoxicated. We disagree that the caller's information was rendered less reliable because the caller described defendant's actions as having the appearance of intoxication, as opposed to merely describing her actions. Just as an observer might describe someone as appearing ill or appearing irrational, describing a person's behavior as appearing intoxicated conveys to the officer a general notion of the behavior being described. Here, the caller reported that defendant had been at a public access area at the state park, was yelling at her children and behaving obnoxiously, and appeared to be intoxicated, which if true, would make it illegal, as well as dangerous, for her to drive on the public roadway. The caller reported those observations to the police; from there, the officer was entrusted with the decision of how to proceed in light of that information. We are not prepared, as the circuit court was in this case, to draw a fine distinction between slurred speech and stumbling versus yelling and acting obnoxious as indicia of intoxication.

The State's interest in preventing drunk driving is strong. See *Michigan Dep't of State Police v Sitz*, 496 US 444, 449-451; 110 S Ct 2481; 110 L Ed 2d 412 (1990). The officer in this case was faced with making a decision about whether, based solely on a citizen's tip, to stop a vehicle that potentially was being piloted by an intoxicated driver with two children as passengers. His options were to wait and see whether the driver would reveal her lack of sobriety by violating traffic laws or, worse, becoming involved in a car accident, or he could conduct an investigatory stop after corroborating the tip's "innocent details" regarding the vehicle's make, model, color, license plate number, and location. We conclude that the informant's tip provided accurate details that were corroborated by the officer, making it sufficiently reliable, and also conveyed information related to contemporaneous and ongoing potential criminal activity. Under the circumstances of this case, the interest in ensuring public safety on a roadway outweighed the minimally invasive nature of a traffic stop. See *Barbarich*, 291 Mich App at 479. Under the totality of the circumstances, the officer had reasonable, articulable suspicion that justified an investigative stop of defendant's vehicle, and the circuit court erred by concluding otherwise.

Reversed and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Michael F. Gadola
/s/ Jonathan Tukel